993 A.2d 55

OFFICE OF the PUBLIC DEFENDER, et al.

v.

STATE of Maryland.

No. 9 Sept.Term, 2009.

Court of Appeals of Maryland.

April 16, 2010.

Peter F. Rose. Gen. Counsel (Nancy S. Forster, Public Defender, Baltimore, MD), on brief for Appellants.

Andrew H. Baida (Caroline L. Hecker of Rosenberg, Martin, Greenberg, LLP, Baltimore, MD), on brief for Appellees.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

In the present case, we must determine whether a Maryland trial court possesses the authority, statutory or otherwise, to appoint an attorney from a local Office of the State Public Defender ("OPD") to represent a criminal defendant who qualifies for public representation based on indigency, as defined by the Maryland Code, upon the court's finding that the local OPD denied previously and erroneously representation to the defendant. For reasons we shall explain, we answer that question in the affirmative. As such, we shall hold that the Circuit Court for Cecil County did not exceed its authority when it appointed John K. Northrop ("Northrop"), the Deputy District Public Defender for Cecil County, or a member of his office or a panel attorney, to represent Jason Flynn Stinnett ("Stinnett"), a criminal defendant whom the Circuit Court found qualified as indigent under the Maryland Code, but to whom representation had been denied previously and wrongfully by the local OPD. Despite our holding, we shall reverse the Circuit Court's judgment of contempt against Northrop, issued in response to his refusal (on orders from his superiors) to appear in court on Stinnett's behalf in accordance with the order of appointment, because the Circuit Court failed to comply with the mandatory requirements of the Maryland Rules governing contempt judgments.

## *FACTS*

Jason Flynn Stinnett was indicted by a grand jury in Cecil County on multiple burglary charges and other related offenses. Stinnett applied timely for public legal representation from the local OPD. On 19 March 2008, the local OPD determined that Stinnett failed to meet the requirements for

its services because his income [1] exceeded 110% of the Federal Poverty Guidelines,[2] the limit to qualify for representation by the OPD according to COMAR 14.06.03.05A [3] and D(2).[4]

---

1. The record contains no information, formal or informal, as to the local OPD's specific calculation of Stinnett's income for the purpose of determining his eligibility for legal representation.

2. In 2008, when the local OPD considered Stinnett's application for representation, the Federal Poverty Guideline was $10,400 for a single individual and $14,000 for a family or household of two individuals.

3. COMAR 14.06.03.05A, entitled "Determination of Eligibility for Services," provides:

   Pursuant to Article 27A, § 7, Annotated Code of Maryland, eligibility for services of the Office of the Public Defender shall be determined on the basis of need of the individual seeking legal representation. Need may be measured according to the applicant's maximum annual net income level and asset ceiling. In cases where good cause is shown, need may be measured by the financial ability of the applicant to engage and compensate competent private counsel and to provide all other necessary expenses of representation. This ability shall be recognized to be a variable depending on:
   (1) The nature, extent, and liquidity of assets;
   (2) The disposable net income of the defendant;
   (3) The nature of the offense;
   (4) The effort and skill required to gather pertinent information;
   (5) The length and complexity of the proceedings; and
   (6) Any other foreseeable expenses.
   COMAR 14.06.03.05A (2008).

4. COMAR 14.06.03.05D, entitled "Maximum Income Level," provides:
   (1) Except as provided in § D(3) of this regulation, the maximum net annual income level for persons accepted for representation in District Court cases, violation of probation, and contempt proceedings may not exceed 100 percent of the current official federal poverty income guidelines as found in § 673(2) of OBRA–1981 (42 U.S.C. § 9902(2)).
   (2) Except as provided in § D(3) of this regulation, the maximum net annual income level for persons accepted for representation in all other cases may not exceed 110 percent of the current official federal poverty income guidelines as found in § 673(2) of OBRA–1981 (42 U.S.C. § 9902(2)).
   (3) In cases where good cause is shown, a district public defender or division chief may exempt an applicant from the maximum income level requirement upon due consideration of factors enumerated in Regulation .05 of this chapter.
   COMAR 14.06.03.05D. Although no statute or regulation defines the phrase "net annual income level," the "Application for Public Defender Services" contained in COMAR 14.06.03.08 requests information from

Thus, the local OPD informed Stinnett, by letter dated 19 March 2008, that, because his income exceeded the maximum net income level, he did not qualify for representation by that agency.

On 7 April 2008, Stinnett appeared, unrepresented by counsel, at a status hearing before the Circuit Court and requested that an attorney be appointed for him because he could not afford to retain private counsel and the local OPD had denied representation. Upon Stinnett's request, the trial judge proceeded (at some length) to describe his perception of the relative roles of the local OPD and the court in providing counsel for indigent defendants, and the authority of the court to appoint counsel on an indigent defendant's behalf where the local OPD denies representation:

> Our Chief Administrative Judge here . . . has indicated that he has researched this matter and has determined that case law does not seem to indicate that we cannot appoint the Public Defender's ourselves and has ask (sic) us, other judges, from now on that if we do find indigency to actually appoint the Public Defender. He said he's reviewed the cases and there is some dicta about their being Executive Agency, but he does not believe that's controlling because the issues before the Appellate Court, at that time, were not those that dealt with the authority of the Court to appoint the Public Defender's Office to represent somebody. I just checked with . . . the Acting Administrative Judge, and he says exactly the same thing. That, if we do find a defendant indigent, we are to appoint the Public Defender's Office itself to represent the defendant. And the Court has done a lot of investigation on this, previously, personally talked with Judge Bell, this Court had ordered . . . or requested the Court Clerks to research this issue about 5

the applicant concerning his or her "total net monthly income" and provides entries for net income from "Employer," "Self-employment," "Social Security," "Unemploy/Strike Benefits," "Alimony/Child Support," "Workman's Compensation," "Other," and "Pensions/Insurance Payments." The application and regulation do not state whether "net income" should be calculated using pre-tax or post-tax income.

years ago and we had researched 42 other states, we hadn't quite got all 50, and every single one, the Court always has the authority, at least as a last resort to appoint the Public Defender. In speaking with Judge Bell, Judge Bell told me, personally, on the telephone that he had researched all 50 states and all 50 ... Maryland would be the only one that, it didn't seem to him, that we had a direct authority to appoint the Public Defender. But, he didn't say that prohibited it, either.

Anyway, I'm following the Administrative Judges (sic) and the Acting Administrative Judges (sic) decisions that we are to appoint the Public Defender if we do find indigency.

\* \* \*

The next thing, under Article 27A, Section 7,[5] it's the Public Defender article. It talks about the duty of the Public Defender's Office. Um ... to provide representation and it follows the case, I believe, of *State v. Baldwin*,[6] if I'm remembering this correctly.

Anyway, as a result of the case, the case spelled out what the Public Defender's Office has to do in determining whether a defendant qualifies for the Public Defender's services. It also states, basically, that the Court has to do the same thing when it makes it's (sic) own determination. Although, it does make a separate, independent determination. And the Court certainly will do that. But what happened after Article 27A, Section 1 et sec. (sic) was passed, evidently the Public Defender's Office then went and got a regulation passed which was actually contrary to the ... Art. 27A, Sec. 1 and thereafter. In that it used a formula which is not at all what *Baldwin v. State* says or *State v. Baldwin*. You have to figure each case separately

---

5. In 2008, Article 27A, § 7, was re-codified as Maryland Code, Criminal Procedure Article § 16–210. Because the proceedings in the present case occurred prior to the re-codification, we shall refer to the provisions of Article 27A, the version of the statute in effect at the time.

6. The Circuit Court was referring to the Court of Special Appeals's opinion in *Baldwin v. State*, 51 Md.App. 538, 444 A.2d 1058 (1982).

and then there is supposedly the District Public Defender then can review some ... a determination made by the local Public Defender's Office, but that certainly is not presented to any defendant and the determination factor is 110% of the Federal Poverty guidelines for Circuit Court cases. There's absolutely nothing in the underlying case which provided for those factors to be used.

Following this explication, the court proceeded to conduct an indigency hearing, examining the factors to be considered in determining indigency contained in Maryland Code, Article 27A, § 7;[7] COMAR 14.06.03.05A; and *Baldwin*,[8] rather than applying the maximum income level rule contained in COMAR 14.06.03.05A and D(2), the standard used by the local OPD with regard to Stinnett's application. In doing so, the Circuit Court maintained that, under *Baldwin*, any determination of

---

7. Article 27A, § 7, entitled "Determination of eligibility for services; investigation of financial status of defendant; recovery of expenses," provides in pertinent part:

> (a) Determination of eligibility for services.—Eligibility for the services of the Office of the Public Defender shall be determined on the basis of the need of the person seeking legal representation. Need shall be measured according to the financial ability of the person to engage and compensate competent private counsel and to provide all other necessary expenses of representation. Such ability shall be recognized to be a variable depending on the nature, extent and liquidity of assets; the disposable net income of the defendant; the nature of the offense; the effort and skill required to gather pertinent information; the length and complexity of the proceedings; and any other foreseeable expenses. In the event that a determination of eligibility cannot be made before the time when the first services are to be rendered, the office may undertake representation of an indigent person provisionally, and if it shall subsequently determine that the person is ineligible, it shall so inform the person, and the person shall thereupon be obliged to engage his own counsel and to reimburse the office for the cost of the services rendered to that time.

> Md.Code, Art. 27A, § 7 (1957, 2003 Repl. Vol.).

8. Under *Baldwin*, when conducting its own determination of eligibility for public representation based on indigency, a court should consider "any information offered by the parties which may reasonably bear upon the defendant's ability to afford private counsel...." 51 Md.App. at 553, 444 A.2d at 1067. In that case, the Court of Special Appeals noted that "the real key to determining indigence (eligibility) is stated in § 7(a)." *Id.* at 550, 444 A.2d at 1066.

indigency, whether conducted by the local OPD or a trial court, must take into account the statutory indigency factors contained in Art. 27A, § 7, and COMAR 14.06.03.05A, and that the local OPD acted contrary to the mandates of *Baldwin* when it considered solely whether Stinnett's net annual income exceeded 110% of the Federal Poverty Guidelines.

Turning to examine the specifics of Stinnett's financial situation, in response to the court's questioning, Stinnett testified that: (1) he was employed with Mid–Atlantic Electrical Contractors, a job which paid him $19 per hour (resulting in a net take-home income of approximately $2123 per month), without any opportunity for overtime; (2) he had approximately $400 in a bank account and no other assets that could be liquidated to pay for an attorney; (3) at the time of the hearing, he resided in a halfway house, paying $650 per month in boarding costs and $65 per month for food; (4) he had been ordered by the Circuit Court for Harford County to pay $331 per month in restitution arising from a prior robbery conviction; (5) he paid the entirety of his daughter's private school tuition, at a cost of $440 per month; (6) he spent approximately $108 per month to purchase lunch; and, (7) he paid $520 per month for transportation operating costs to and from work in a vehicle loaned to him by his father. In addition, based on standard child support calculations, the Circuit Court determined that Stinnett's expenses relating to the shared custody of his daughter amounted to $420 per month.

Totaling Stinnett's income and expenses, each aspect of which it found to be "fair and reasonable," the Circuit Court determined that Stinnett had, in fact, no net income; Stinnett's net income of $2123 per month fell well below the $2534 in expenses he incurred each month. In addition, the Circuit Court found that the reasonable cost for a private attorney to represent Stinnett would be between $3000 and $5000. On this basis, the judge determined that, despite the local OPD's conclusion to the contrary, Stinnett, in fact, was indigent under the factors enumerated in Art. 27A, § 7, and COMAR 14.06.03.05A, as explicated in *Baldwin,* and was entitled to the appointment of an attorney at the State's expense. Accord-

ingly, the Circuit Court issued an order[9] naming Northrop, the Deputy District Public Defender for Cecil County, or another qualified attorney from the local OPD or its list of panel attorneys, to represent Stinnett.[10] Northrop filed a notice of appeal from the order appointing him counsel for Stinnett, but did not seek to stay its effect pending the outcome of the appeal.

At a later hearing in Stinnett's case, held on 8 August 2008, Northrop did not appear. As a result, the trial judge found him in direct contempt of court and fined him $10.00. Subsequent to the contempt finding against Northrop, Stinnett entered a guilty plea, which the Circuit Court accepted, and was sentenced to a three-year term of imprisonment, suspended, and two years unsupervised probation. Stinnett did not

---

9. This was an amended order, issued *sua sponte*, on 14 July 2008. Substantively, it was the same as the initial order, issued 8 April 2008, except that it appointed specifically Northrop to represent Stinnett. The Circuit Court's initial order had appointed merely "an attorney" from the local OPD to represent Stinnett. Following the issuance of the initial order, Northrop wrote a letter to Stinnett advising him that, notwithstanding the court order, the local OPD would not be representing him. On 25 April 2008, Northrop wrote, "despite [the Circuit Court's] having ordered this office to represent you, we will not be representing you at your Status Conference on August 8, 2008 and your Trial on September 9 and 10, 2008." The letter did indicate that Stinnett could reapply for representation, but that a decrease in his income was a prerequisite to the OPD's reconsideration of Stinnett's eligibility. Two reminder letters reiterating the aforementioned information also were sent to Stinnett, on 29 April 2008 and 19 June 2008, respectively.

10. The record reflects that, well before any consideration of Stinnett's indigency by either the local OPD or the Circuit Court in the present case, the Circuit Court was informed, by letter from the County Attorney dated 19 March 2003, that the Board of County Commissioners had "no funds to pay for any 'public defender fees that are not covered by the State of Maryland.' " In addition, according to a generic reference in the record, the local bar association indicated previously (the date and manner of which notice is unclear) that its members were not willing to "volunteer" their services in criminal cases, other than through a program such as Maryland Volunteer Lawyers Service. As such, based apparently in part on the dearth of other options from which to appoint counsel, the Circuit Court appointed Northrop, or another attorney from the local OPD, to represent Stinnett.

appeal the judgment entered against him. On the other hand, Northrop noted an appeal to the Court of Special Appeals from the 8 August 2008 order finding him in direct contempt. He also filed with this Court a petition for writ of certiorari, in which he raised two questions:

(1) Did the trial court err in ordering Public Defender staff attorney/s to represent a criminal defendant in a criminal case after the Public Defender declined to provide representation in the case; and

(2) Did the trial court err in finding Mr. Northrop in contempt?

We granted Northrop's petition for writ of certiorari, 407 Md. 275, 964 A.2d 675 (2009), prior to further proceedings in the intermediate appellate court.

## MOOTNESS

■ As a threshold matter, the State contends that the present case is moot, noting that Stinnett was convicted and sentenced, but did not appeal. We disagree.

■ Ordinarily, in order for a case to be heard and an appellate court to provide a remedy, there must be an existing controversy. *Suter v. Stuckey*, 402 Md. 211, 219, 935 A.2d 731, 736 (2007); *Dep't of Human Res., Child Care Admin. v. Roth*, 398 Md. 137, 143, 919 A.2d 1217, 1221 (2007); *Attorney Gen. v. Anne Arundel County School Bus Contractors Ass'n*, 286 Md. 324, 327, 407 A.2d 749, 752 (1979). If no existing controversy is present, the case is moot and an appellate court ordinarily will not consider the case on its merits. *Suter*, 402 Md. at 219–20, 935 A.2d at 736; *Roth*, 398 Md. at 143, 919 A.2d at 1221; *State v. Peterson*, 315 Md. 73, 82, 553 A.2d 672, 677 (1989); *Mercy Hosp. v. Jackson*, 306 Md. 556, 562, 510 A.2d 562, 565 (1986); *State v. Ficker*, 266 Md. 500, 506–07, 295 A.2d 231, 235 (1972).

Although it is true, as the State contends, that the criminal proceedings against Stinnett (which, in turn, led to the contempt finding against Northrop) have concluded with a final judgment from which no appeal has been taken, the issue at

the center of the present appeal does not concern the merits of Stinnett's case, *i.e.*, the adequacy of his guilty plea or the propriety of the sentence he received. Rather, this case presents the question of whether a circuit court possesses the authority to appoint an attorney from the local OPD to represent an indigent criminal defendant, where the circuit court determines the local OPD denied erroneously representation. When Northrop was held in contempt for refusing to comply with the Circuit Court's order appointing him counsel for Stinnett, an entirely new controversy, separate from Stinnett's case, arose. That it arose out of the underlying criminal prosecution of Stinnett, which has concluded, does not ameliorate, in any way, the jeopardy in which the order placed Northrop. Northrop's timely appeal of the contempt judgment against him entitles him to adjudication of the propriety of both the order appointing him to represent Stinnett and the order holding him in contempt. As such, because the present appeal presents an existing controversy which has yet to be resolved, it is not moot.

In addition, even where a case may be moot technically, there exist a number of exceptions to the general rule that the appeal must be dismissed. For example, where a case, while technically moot, presents a recurring matter of public concern which, unless decided, will continue to evade review, we nonetheless have considered the case on its merits. *In re Julianna B.*, 407 Md. 657, 665–66, 967 A.2d 776, 780–81 (2009); *Suter*, 402 Md. at 220, 935 A.2d at 736; *Arrington v. Dep't of Human Res.*, 402 Md. 79, 91–92, 935 A.2d 432, 439–40 (2007); *Coburn v. Coburn*, 342 Md. 244, 250, 674 A.2d 951, 954 (1996); *Anne Arundel County School Bus Contractors Ass'n*, 286 Md. at 328, 407 A.2d at 752; *Lloyd v. Supervisors of Elections*, 206 Md. 36, 43, 111 A.2d 379, 381–82 (1954). It is clear that the question of a trial court's authority to appoint counsel, including an attorney from the local OPD, for an indigent individual, and the relation of that authority to OPD's power to determine eligibility for representation by its attorneys in the first instance, are matters of public concern. As noted by the Circuit Court, these questions are impacting presently numer-

ous criminal proceedings in Cecil County. Unless addressed and decided on appeal, the questions at issue likely will recur, in Cecil County and in other counties within Maryland. Accordingly, even if the case was moot technically, we nevertheless would consider the issues raised in the present appeal as matters of public concern likely to evade review.

## THE APPOINTMENT OF NORTHROP

At the outset, it is clear to this Court, as it was to the Circuit Court in the proceedings below, that the local OPD denied erroneously representation to Stinnett.[11] As noted *supra*, Article 27A, § 7, entitled "Determination of eligibility for services; investigation of financial status of defendant; recovery of expenses," provides in pertinent part:

> (a) Determination of eligibility for services.—Eligibility for the services of the Office of the Public Defender shall be determined on the basis of the need of the person seeking legal representation. *Need shall be measured according to the financial ability of the person to engage and compensate competent private counsel and to provide all other necessary expenses of representation.* Such ability shall be recognized to be a variable depending on the nature, extent and liquidity of assets; the disposable net income of the defendant; the nature of the offense; the effort and skill required to gather pertinent information; the length and complexity of the proceedings; and any other foreseeable expenses.

Art. 27A, § 7(a) (emphasis added). Rather than apply the statutorily-mandated criteria for determining indigency provided by Art. 27A, § 7(a), the local OPD, in denying representation to Stinnett on this record, relied solely on certain language contained in COMAR 14.06.03.05A and D(2). COMAR 14.06.03.05, entitled "Determination of Eligibility for Services," provides in pertinent part:

---

11. The Dissent does not contend seriously to the contrary.

A. Pursuant to Article 27A, § 7, Annotated Code of Maryland, eligibility for services of the Office of the Public Defender shall be determined on the basis of need of the individual seeking legal representation. *Need may be measured according to the applicant's maximum annual net income level and asset ceiling. In cases where good cause is shown, need may be measured by the financial ability of the applicant to engage and compensate competent private counsel and to provide all other necessary expenses of representation.* This ability shall be recognized to be a variable depending on:

(1) The nature, extent, and liquidity of assets;

(2) The disposable net income of the defendant;

(3) The nature of the offense;

(4) The effort and skill required to gather pertinent information;

(5) The length and complexity of the proceedings; and

(6) Any other foreseeable expenses.

\* \* \*

D. Maximum Income Level.

(1) Except as provided in § D(3) of this regulation, the maximum net annual income level for persons accepted for representation in District Court cases, violation of probation, and contempt proceedings may not exceed 100 percent of the current official federal poverty income guidelines as found in § 673(2) of OBRA–1981 (42 U.S.C. § 9902(2)).

(2) Except as provided in § D(3) of this regulation, the maximum net annual income level for persons accepted for representation in all other cases may not exceed 110 percent of the current official federal poverty income guidelines as found in § 673(2) of OBRA–1981 (42 U.S.C. § 9902(2)).

(3) In cases where good cause is shown, a district public defender or division chief may exempt an applicant from the maximum income level requirement upon due consid-

eration of factors enumerated in Regulation .05 of this chapter.

COMAR 14.06.03.05 (emphasis added). By evaluating Stinnett's application solely under the maximum net annual income and asset ceiling standard of COMAR 14.06.03.05A and D(2), while ignoring wholly the statutorily-mandated indigency factors contained in Art. 27A, § 7(a), and COMAR 14.06.03.05A, the local OPD applied the incorrect standard for determining indigency of applicants and erred, both legally and factually, in concluding that Stinnett did not qualify for representation by its attorneys.[12]  *See Medstar Health v.*

---

**12.** Although we are not called on in the present case to address directly the legal validity of COMAR 14.06.03.05A and D(2), we pause to note that a seemingly compelling argument exists that those subsections, as they presently stand, purporting to allow the OPD to consider an applicant's maximum net annual income and asset ceiling in determining eligibility for representation, rather than mandating consideration of the six indigency factors, are unauthorized by, and, in fact, conflict directly with, Art. 27A, § 7, the enabling statute.

In this regard, it may be helpful to note the history of COMAR 14.06.03.05. In 1995, the OPD, through the standard process for issuing administrative regulations, amended unilaterally and significantly COMAR 14.06.03, the general regulation entitled "Eligibility for Services." *See* 22 Md. Reg. 474–75 (March 17, 1995). Prior to the change, Section .05A, entitled "Determination of Eligibility for Services," provided:

Pursuant to Article 27A, § 7, Annotated Code of Maryland, eligibility for services of the Office of the Public Defender shall be determinated on the basis of need of the individual seeking legal representation. *Need shall be measured according to the financial ability of the person to engage and compensate competent private counsel and to provide all other necessary expenses of representation.* This ability shall be recognized to be a variable depending on:

    (1) The nature, extent, and liquidity of assets;
    (2) The disposable net income of the defendant;
    (3) The nature of the offense;
    (4) The effort and skill required to gather pertinent information;
    (5) The length and complexity of the proceedings;  and
    (6) Any other foreseeable expenses.

*See* 21 Md. Reg. 1896 (October 28, 1994) (emphasis added). Prior to the changes, no regulation provided for a maximum net annual income or asset threshold above which representation by the OPD would be denied categorically.

In 1995, the OPD added Section .05D, concerning maximum net annual income levels for representation, to the regulation and changed

*Maryland Health Care Comm'n,* 376 Md. 1, 21, 827 A.2d 83,

significantly the language of .05A. *See* 22 Md. Reg. 474–75 (March 17, 1995). Following the amendments, Section .05A provided:

> Pursuant to Article 27A, § 7, Annotated Code of Maryland, eligibility for services of the Office of the Public Defender shall be determined on the basis of need of the individual seeking legal representation. *Need may be measured according to the applicant's maximum annual net income level and asset ceiling. In cases where good cause is shown, need may be measured by the financial ability of the applicant to engage and compensate competent private counsel and to provide all other necessary expenses of representation.* This ability shall be recognized to be a variable depending on [the six factors enumerated above].

*See id.* at 475 (emphasis added). Apparently, the OPD undertook these changes to the regulation on advice of the Attorney General. *See* 79 Op. Atty Gen. 354 (1994). Previously, the OPD utilized an internal manual to assess an applicant's eligibility for representation which contained a grid, arranged by income levels and number of dependents. *Id.* at 355. An applicant "with income in excess of the amount allocated for a particular number of dependents w[ould] be denied representation." *Id.* The OPD was concerned that, if the public had access to these eligibility criteria, applicants might tailor their applications to meet the requirements. *Id.* at 356. Nevertheless, the Attorney General opined that, in order to be used by the OPD, the eligibility criteria based on net income and number of dependents, by virtue of its nature as a "regulation," needed to be adopted under the formal rulemaking procedures of the Administrative Procedures Act and included in COMAR. *Id.* at 361.

Section .02B, also added by the OPD as part of the 1995 amendments, further defined the self-perceived role of the OPD in making eligibility determinations, providing that:

> "[t]hese regulations are designed to ensure that client eligibility will be determined according to criteria that give preference to the legal needs of those least able to obtain legal assistance and afford sufficient latitude for the Office to consider local circumstances and its resource limitations."

*See* 22 Md Reg. 474–75 (March 17, 1995); 21 Md. Reg. 1896 (October 28, 1994). It should be noted that such language is inconsistent with certain language in *Baldwin,* in which the Court of Special Appeals stated:

> Finally, it goes without saying that reductions in the Public Defender's budget and his desire to be frugal have no relevance whatever in the matter. The question is whether *appellant* was indigent, not the Public Defender. The court's obligation was to uphold the Constitution in the manner directed by the statute and by Maryland Rule 723, and that obligation is not subject to or in any way dependent upon the level of appropriations received by the Public Defender.

*Baldwin,* 51 Md.App. at 555, 444 A.2d at 1069 (emphasis in original). In addition, it is worth noting that consideration of the OPD's resources and maximum net income levels of applicants is not provided for by Art. 27A, § 7, the enabling statute from which COMAR 14.06.03.05 is derived.

96 (2003) ("Moreover, where the General Assembly has dele-gated ... broad power to an administrative agency to adopt [legislative rules] or regulations [in a particular area], this Court has upheld the agency's rule or regulations as long as they did not contradict the language or purpose of the stat-ute.") (internal quotation marks omitted); *Christ v. Dep't of Natural Res.*, 335 Md. 427, 437, 644 A.2d 34, 38 (1994) ("Regulations promulgated by an administrative agency must, of course, be consistent with the letter and spirit of the law under which the agency acts.") (internal quotation marks omitted); *Dep't of Soc. Servs. v. Russell*, 159 Md.App. 594, 611, 861 A.2d 92, 102 (2004) ("Where the language of a statute differs from relevant language in a departmental regulation, the statutory language must control.").

Stinnett's testimony before the Circuit Court regarding his inability to afford private counsel demonstrated clearly that, under a proper evaluation of the indigency factors listed in Art. 27A, § 7(a), he qualified as indigent for purposes of representation by the local OPD. As noted *supra*, according to the Circuit Court's calculations, the defendant's net income totaled $2123 per month, falling well below the $2534 in expenses he incurred each month. In addition, the trial judge determined that the reasonable cost of a private attorney in Stinnett's case would be between $3,000 and $5,000. As such, the Circuit Court found properly that Stinnett qualified as indigent under Art. 27A, § 7(a), the applicable standard for determining indigency, and that the local OPD's conclusion to the contrary, based solely on the maximum net annual income level and asset ceiling language of COMAR 14.06.03.05A and D(2), was erroneous and contrary to law.

After concluding properly that Stinnett, in fact, was indigent under Art. 27A, § 7, the trial court appointed Northrop, the Deputy District Public Defender for Cecil County, or, alterna-tively, another attorney from the local OPD or its list of panel attorneys, to represent Stinnett. On appeal, OPD contends that the Circuit Court's actions in this regard exceeded its authority, and that, although a circuit court may appoint counsel for an indigent defendant who has been denied repre-

sentation by the local OPD, the circuit court may not appoint an attorney from the local OPD once the local OPD declines representation of the defendant. For reasons we shall explain, we disagree and hold that, upon finding that the local OPD denied erroneously representation to an indigent defendant, a circuit court may appoint any attorney, including an attorney from the local OPD, to represent a defendant.

We previously addressed the statutory division of labor between the courts and the local OPD, with regard to assuring legal representation to indigent individuals, in *Thompson v. State*, 284 Md. 113, 394 A.2d 1190 (1978). In *Thompson*, the OPD determined, at an initial proceeding, that the defendant was "technically" eligible for representation, although it noted to the trial court that, despite having no income, the defendant managed to post $750 for a surety bond. *Id.* at 127, 394 A.2d at 1197. Two weeks later, at a subsequent hearing, the defendant requested that the court appoint counsel to represent him, having failed to acquire private representation on his own. *Id.* at 127–28, 394 A.2d at 1197. At that hearing, the OPD maintained to the court that it determined at its initial interview with the defendant that, in fact, he did not qualify for representation and that it informed the defendant that it would not represent him. *Id.* at 128, 394 A.2d at 1197. Apparently, the OPD "wanted to leave it up to the court, making clear that if the court so ordered [it] would provide representation." *Id.* Rather than make an independent determination of the defendant's alleged indigency, the trial court accepted in full the OPD's conclusion that the defendant was not entitled to have representation provided, stating that "you tell me he is not eligible and that is good enough for me." *Id.* at 130, 394 A.2d at 1198.

We reversed the trial court, holding that it erred by failing to determine independently whether to appoint counsel under Art. 27A, § 6(f),[13] following the local OPD's denial of represen-

---

13. Section 6(f), entitled "Authority of courts to appoint counsel in certain situations," provides:

tation. *Id.* at 128, 394 A.2d at 1197. Specifically, we observed that "there is a clear duty imposed on the court, in order to decide whether it should appoint counsel, upon the Public Defender declining to do so, to make its own independent determination whether a defendant is indigent and otherwise eligible to have counsel provided." *Id.* at 129, 394 A.2d at 1198. Regarding the OPD's representation to the court that it would represent the defendant if the court so ordered, we stated, in dicta and without citation to authority, that "[t]he court refused to so order, properly we believe, on the ground that the question whether the Public Defender represented a particular defendant was for the Public Defender and not for the court." *Id.* at 128, 394 A.2d at 1197.[14]

Four years after our decision in *Thompson*, the Court of Special Appeals, in *Baldwin*, observed, also in dicta, that *Thompson* "seemed to hold that if the Public Defender declines to represent a defendant—even on grounds of non-eligibility (as opposed to a potential conflict of interest)—the court has no authority to order him to provide representation." *Baldwin*, 51 Md.App. at 552, 444 A.2d at 1067. In a footnote, the intermediate appellate court conjectured further that "[i]t would appear from [the language of *Thompson*], by logical extension, that, although the court may appoint any other qualified counsel to represent an indigent defendant, it may not appoint the Public Defender against his wish." *Id.* at

---

Nothing in this article shall be construed to deprive any court mentioned in § 4(b)(2) of this article of its authority to appoint an attorney to represent an indigent person where there is a conflict in legal representation in a matter involving multiple defendants and one of the defendants is represented by or through the Office of the Public Defender, or where the Office of the Public Defender declines to provide representation to an indigent person entitled to representation under this article.

Art. 27A, § 6(f).

14. In a grudging, but revealing, concession, the Dissent here concedes that *Thompson*, which it characterizes as "control[ling]" (Dissent op. at 446, 993 A.2d at 76), "did not state [ ] expressly" that OPD's and the courts' responsibilities to ensure legal representation for indigent defendants were separate or that the courts may not trump or supercede the OPD's initial action. Dissent op. at 451, 993 A.2d at 79-80.

552 n. 11, 444 A.2d at 1067. This question, however, was not at the core of *Baldwin*. Rather, the Court of Special Appeals reversed the trial court based on the latter's refusal to appoint counsel for the defendant on the ground that the trial court, in making its required independent determination of indigency, violated Art. 27A, § 7(a), by relying improperly "upon inferences of wealth for which there is no support in the record and upon resources over which [the defendant] had no control." *Id.* at 554, 444 A.2d at 1068.

In the present appeal, the OPD and the Dissent rely heavily on the above quoted language, and other dicta in *Thompson* and *Baldwin*,[15] to support their contentions that, where the OPD declines representation, a reviewing court is powerless to correct a manifest error in the local OPD's determination of eligibility by appointing the local OPD as counsel for the indigent defendant.[16] Such dicta is wholly unpersuasive, particularly in light of the statutory scheme designed by the General Assembly to govern the respective responsibilities of the OPD and the courts in determining whether a criminal defendant qualifies as indigent and whether such individual is entitled to representation paid for by the taxpayers.

---

**15.** The Dissent, endeavoring to elevate the relevant dicta in *Thompson* to the status of a holding, relies for that purpose solely, through bootstrapping, on *dicta* in *Baldwin* and sweepingly claims therefore that "Maryland courts" have held that *Thompson* held as the Dissent imagines.

**16.** The Dissent seems to hold out the possibility of other means of assuring representation of indigent defendants where the OPD wrongfully denies representation. *See* Dissent slip op. at 35, where it rejects "that appointing the OPD is necessary in order to avoid the court from being rendered 'powerless to correct a manifest error.' " Yet, the scant consideration given such alternatives (Dissent op. at 467–68, 993 A.2d at 89–90) and the Dissent's expansive, but inconclusive, footnote 6 (Dissent op. at 441–43, 993 A.2d at 73–75), where it stops short of embracing the local funding/pro bono obligations for appointing private counsel for indigent defendants abandoned by the OPD, belie a comprehensive and coherent resolution of the problem at hand. In reality, the Dissent offers no more than the assurance of endless future litigation between multiple layers of State and local government and the private Bar, with indigent defendants as mere pawns.

Under Art. 27A, § 7, the *"initial* determination, under the law, is to be made by the Public Defender," based upon the criteria enumerated in the statute for determining indigency. *Baldwin,* 51 Md.App. at 551, 444 A.2d at 1066 (emphasis added). The OPD's initial determination of indigency is not final, however, because "[i]n obvious recognition of the fact that the whole system has Constitutional underpinnings and that the courts must, of necessity, be the ultimate protector of those underpinnings," *id.* at 552, 444 A.2d at 1067, the General Assembly provided in Art. 27A, § 6(f), a clear oversight and corrective role for the courts in the indigency determination and appointed-counsel process. Art. 27A, § 6(f), entitled "Panel attorneys; courts not deprived of authority to appoint counsel in certain situations," provides:

Authority of courts to appoint counsel in certain situations.—Nothing in this article shall be construed to deprive any court mentioned in § 4(b)(2) of this article of its authority to appoint *an attorney* to represent an indigent person where there is a conflict in legal representation in a matter involving multiple defendants and one of the defendants is represented by or through the Office of the Public Defender, *or where the Office of the Public Defender declines to provide representation to an indigent person entitled to representation under this article.*

Art. 27A, § 6(f) (emphasis added). Although Art. 27A, § 6(f), does not specify either the procedure or the standard to be employed by the court, under *Thompson,* the court must "make its own independent determination whether a defendant is indigent and otherwise eligible to have counsel provided," 284 Md. at 129, 394 A.2d at 1198, considering "any information offered by the parties which may reasonably bear upon the defendant's ability to afford private counsel . . . [and] us[ing] the same statutory standards" provided in Art. 27A, § 7, which, as discussed *supra,* are the statutory indigency factors that the local OPD should have applied. *Baldwin,* 51 Md.App. at 553–54, 444 A.2d at 1067–68.

Of utmost importance to the present case, Art. 27A, § 6(f), contains no language indicating a legislative intent to prohibit

the appointment of an attorney from the local OPD by a trial court to represent an individual that the court determines qualifies as indigent, except where an actual and unwaived or unwaivable conflict of interest would arise.[17]  Despite the OPD's argument to the contrary, the proposition that a court may not appoint the local OPD against its unjustified wishes finds its legal toehold solely in the crevice of the unpersuasive dicta of *Thompson* and *Baldwin.*  In order to conclude, as the OPD urges, that Art. 27A, 6(f), prohibits the court, in exercising its responsibility to appoint counsel for an indigent defendant, from appointing an attorney from the local OPD, after the local OPD has refused to provide representation for the defendant, we would have to add the phrase "other than the local OPD" to the language of Art. 27A, § 6(f), which states that the trial court may "appoint an attorney to represent an indigent defendant."  Such a judicial insertion into clear legislative language violates sound canons of statutory interpretation and should be avoided.  *See Lonaconing Trap Club, Inc. v. Dep't of Env't,* 410 Md. 326, 339, 978 A.2d 702, 709 (2009) (stating that we neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute).  Although it is clear that the trial court may not appoint the local OPD where the local OPD is prevented from representing an indigent defendant due to an actual and unwaived or unwaivable conflict of interest,[18] the language of Art. 27A, § 6(f), contains no language prohibiting a court from appointing the local OPD where it determines that the local OPD found erroneously that a defendant did not qualify for representation based on the local OPD's failure to

---

**17.**  *See generally Duvall v. State,* 399 Md. 210, 923 A.2d 81 (2007), for analysis of conflict of interest situations in a public defender's office context.

**18.**  There is no suggestion in the record of the present case that the OPD could not represent Stinnett due to a conflict of any kind.  In such an event, the OPD would assign as counsel one of the OPD's panel attorneys or the court could go outside that resource to the general Bar.  Were the latter to be necessary, the question of who would pay for the services of outside counsel makes for an interesting question for another case and another day.

consider the appropriate eligibility criteria, consideration of which is mandated by Art. 27A, § 7. To the extent *Thompson* and *Baldwin* relied on the statutory scheme in support of the conclusion that the court may not appoint the local OPD to represent an indigent defendant where the local OPD declined representation of that individual erroneously, such reliance was wholly misplaced.

■ As opposed to the contentions put forth by the OPD in its appeal, we hold that, in accordance with the provisions of Art. 27A, § § 6 and 7, and the holdings of *Thompson* and *Baldwin*, where the local OPD declines representation to a defendant erroneously, because of the local OPD's failure to consider properly the statutorily-mandated criteria for determining indigency, and where a court finds, upon its subsequent mandatory independent review, that the individual qualifies for representation, the trial court, in carrying out its role as "ultimate protector" of the Constitutional right to counsel, may appoint an attorney from the local OPD to represent the indigent individual unless an actual and unwaived or unwaivable conflict of interest would result thereby.[19]

■ Though by no means a perfect analogy to the situation here, such a procedure is somewhat analogous to legislatively-sanctioned judicial review of decisions made by an administrative agency. Where an administrative agency acts contrary to law by ignoring its statutory mandate and instead relies solely on a self-initiated regulation that does not comply with its enabling statute, a court has the power to order the agency to comply with its statutory mandate. *See Harvey v. Marshall*, 389 Md. 243, 302, 884 A.2d 1171, 1207 (2005) ("An agency decision, for example, may be deemed 'arbitrary or capricious'

---

**19.** The Dissent accuses the Majority of resolving the present case, which it describes as "riddled with complexity," by "adopt[ing] simple solutions that do not enjoy legal support, or stretch logic to the breaking point, for the sake of reaching a preferred resolution." (Dissent op. at 445, 993 A.2d at 76). We say in reply only that the principle of "Occam's Razor," which states that "Entities should not be multiplied unnecessarily," strikes us as a more compelling model to follow

if it is contrary to or inconsistent with an enabling statute's language or policy goals.").

In the present case, where the local OPD disregards the statutorily-mandated criteria for determining indigency provided by Art. 27A, § 7, and relies instead on language contained in a regulation that, as discussed *supra,* is contrary to its enabling statute, a court may direct the local OPD, upon a proper finding of indigency by the court, to represent the indigent individual for which the local OPD denied representation erroneously. Of course, where the local OPD rejects representation based on its own consideration of the indigency criteria provided by Art. 27A, § 7, its determination is entitled to deference, and the court will interfere only when that decision is arbitrary or capricious. Where the OPD acts, however, contrary to its statutory mandate by wholly disregarding the indigency factors contained in Art. 27A, § 7, it abuses its discretion and its eligibility determination is entitled to no weight. In such a scenario, under the plain language of Art. 27A, § 6(f), the trial court, upon finding properly that the defendant qualifies as indigent under the statutorily-mandated indigency factors appearing in Art. 27A, § 7, may appoint "an attorney" to represent the defendant, including an attorney from the local OPD.[20]

---

here. In other words, oftentimes, the simplest solution is the better one.

**20.** In passing, the Dissent asserts that the Majority's holding "tramples on the doctrine of separation of powers," although the Dissent devotes but a paragraph to such an argument, stating merely certain core principles of the doctrine. (Dissent op. at 446, 472–73, 993 A.2d at 76–77, 92–93). In its brief, the OPD gave similarly short shrift to a "separation of powers" argument, providing not much more than a block quotation from *Atty. Gen. v. Waldron,* 289 Md. 683, 688–89, 426 A.2d 929, 933 (1981), and presciently contending that the Majority's conclusion "would, in effect, sanction the expenditure of Executive Branch resources at the direction and discretion of the Judiciary in violation of the doctrine of 'separation of powers.'" The devotion of such little attention by the OPD and the Dissent to a "separation of powers" argument makes considerable sense because this is simply not a "separation of powers" case. Our holding in no way exercises judicial power over Executive Branch monetary resources. OPD staff attorneys are salaried employees, hired to represent qualifying indigent defendants, according to statutory criteria. Our holding requires mere-

No language in the Public Defender Statute suggests that, when the General Assembly provided the trial courts with the power to appoint "an attorney" for an indigent defendant where the OPD declines representation means, in fact, only the power to appoint "an attorney other than the OPD." No appellate court in this State has held previously that the attorneys in the local OPD are ineligible from appointment by a circuit court following the local OPD's factually and legally erroneous rejection of representation of an indigent defendant. As such, we hold that, under the Article 27A and case law, where the OPD has denied representation for an indigent individual erroneously, based on the OPD's failure to apply the statutorily-mandated indigency criteria contained in Art. 27A, § 7, and the circuit court finds that the defendant, in fact, is indigent under that standard, the circuit court may appoint an attorney from the local OPD to represent the defendant, unless an actual and unwaived or unwaivable conflict of interest would result.

## THE ORDER OF CONTEMPT

■ Although we hold that the Circuit Court acted within its authority when it appointed Northrop to represent Stinnett, we nevertheless reverse the Circuit Court's order finding Northrop in direct contempt for refusing to appear as Stinnett's counsel. We do so on the ground that the order was entered improperly according to Maryland Rule 15–203(b)(1).[21]

---

ly that the OPD do no more than comply with its existing, statutorily-mandated job description, i.e., perform the services they are paid to perform.

21. Rule 15–203(b), entitled "Order of contempt," provides:
Either before sanctions are imposed or promptly thereafter, the court shall issue a written order stating that a direct contempt has been committed and specifying:
(1) whether the contempt is civil or criminal;
(2) the evidentiary facts known tot he court from the judge's own personal knowledge as to the conduct constituting the contempt, and as to any relevant evidentiary facts not so known, the basis of the court's findings,
(3) the sanction imposed for the contempt;

That Rule, entitled "Direct civil and criminal contempt," requires that a written order of direct contempt specify "whether the contempt is civil or criminal." Rule 15–203(b)(1). Failure to comply with the requirement mandates reversal of the judgment of contempt. *See King v. State*, 400 Md. 419, 445, 929 A.2d 169, 184 (2007) (noting that the failure of a court to comply with the Maryland Rules renders its order of contempt fatally defective and requires reversal). In the present case, the Circuit Court's contempt order against Northrop failed to specify whether the contempt was civil or criminal, and, thus, the judgment of contempt against Northrop must be reversed.

**JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE JUDGMENT OF CONTEMPT ENTERED AGAINST JOHN K. NORTHROP; COSTS TO BE PAID BY THE STATE.**

BELL, C.J., files a dissenting and concurring opinion in which BATTAGLIA and GREENE, JJ., join.

Dissenting and Concurring Opinion by BELL, Chief Judge, which BATTAGLIA and GREENE, JJ., join.

I. *Background*

In the underlying criminal prosecution, out of which this appeal has emanated, a grand jury of the Circuit Court for Cecil County indicted Jason Flynn Stinnett ("Stinnett"), charging him with two counts of Burglary in the First Degree, one count of Burglary in the Second Degree/General, two counts of Fourth Degree Burglary, four counts of Theft under $500, and two counts of Malicious Destruction under $500. As

---

(4) in the case of civil contempt, how the contempt may be purged, and

(5) in the case of criminal contempt, (A) if the sanction is incarceration, a determinate term, and

(B) any condition under which the sanction may be suspended, modified, revoked, or terminated.

Rule 15–203(b) (2008).

a result, Stinnett sought legal representation from the Office of the Public Defender ("OPD"). The OPD declined to provide representation because it determined that Stinnett's "income exceed[ed] the allowable limit to qualify for representation by the Office of the Public Defender."

Subsequent to that decision by the OPD, and apparently dissatisfied with the OPD's eligibility determination, the trial court conducted an indigency hearing to determine for itself whether Stinnett was indigent and thus qualified for appointed counsel.[1] Focused on the factors enumerated in Maryland Code (1957, 2003 Repl. Vol.) Article 27A, § 7(a),[2] the trial

---

1. The trial judge, before addressing Stinnett, stated for the record:
   "Our Chief Administrative Judge ... Judge Jackson ... has indicated that he has researched this matter and has determined that case law does not seem to indicate that we cannot appoint the Public Defender's ourselves and has ask[ed] us, other judges, from now on that if we do find indigency to actually appoint the Public Defender."
   The trial judge further stated:
   "In speaking with Judge Bell, Judge Bell told me, personally, on the telephone that he had researched all 50 states and all 50. . . . Maryland would be the only one that, it didn't seem to him, that we had a direct authority to appoint the Public Defender. But he didn't say that prohibited it, either."
   "Anyway, I'm following the Administrative Judges['] and the Acting Administrative Judges['] decisions that we are to appoint the Public Defender if we do find indigency."

2. Maryland Code (1957, 2003 Repl. Vol.) § 7. Determination of eligibility for services; investigation of financial status of defendant; recovery of expenses
   (a) Determination of eligibility for services.—Eligibility for the services of the Office of the Public Defender shall be determined on the basis of the need of the person seeking legal representation. Need shall be measured according to the financial ability of the person to engage and compensate competent private counsel and to provide all other necessary expenses of representation. Such ability shall be recognized to be a variable depending on the nature, extent and liquidity of assets; the disposable net income of the defendant; the nature of the offense; the effort and skill required to gather pertinent information; the length and complexity of the proceedings; and any other foreseeable expenses. In the event that a determination of eligibility cannot be made before the time when the first services are to be rendered, the office may undertake representation of an indigent person provisionally, and if it shall subsequently determine that the person is ineligible, it shall so inform the person, and the person

court's "separate, independent determination" of Stinnett's financial ability led it to conclude that the OPD's regulations were "contrary" to its enabling statute and, consequently, to reach a different result from that reached by the OPD. It found, in fact, that the OPD's rejection letter was based on Stinnett's income alone and did not take into account the other factors required by § 7(a) to be considered. Accordingly, the court concluded that Stinnett "cannot afford an attorney" and given the "very, very serious charges" he was facing, needed legal representation.

Based on the indigency hearing, "and considering and applying the factors of Art. 27A, Secs. 6(f) [3] and 7(a), *Baldwin v.*

---

shall thereupon be obliged to engage his own counsel and to reimburse the office for the cost of the services rendered to that time.

Effective October 1, 2008, *see* Chapter 15, Section 2 of the Acts of 2008 Article 27A, the Public Defender Statute, was repealed and reenacted as Md.Code Criminal Procedure Article. § 16–101, *et seq.* The Revisor's Notes for §§ 16–201–16–213 state that each "section is new language derived without substantive change from former Art. 27A." The Legislature did not, therefore, intend to change the interpretation or the manner in which the subsections are given effect. Accordingly, we shall refer, throughout this opinion, to the version of the statute in effect when this case was decided by the trial court.

3. § 6. Panel attorneys; courts not deprived of authority to appoint counsel in certain situations

(f) Authority of courts to appoint counsel in certain situations.— Nothing in this article shall be construed to deprive any court mentioned in § 4(b)(2) of this article of its authority to appoint an attorney to represent an indigent person where there is a conflict in legal representation in a matter involving multiple defendants and one of the defendants is represented by or through the Office of the Public Defender, or where the Office of the Public Defender declines to provide representation to an indigent person entitled to representation under this article.

Although enacted by the Legislature in 1971, *see* Chapter 209, Section 1 of the Acts of 1971, Article 27A § 6(f) first appeared in the 1973 Cumulative Supplement. It then read:

"Nothing in this article shall be construed to deprive any court of its authority to appoint an attorney to represent an indigent person where there is a conflict in legal representation in a matter involving multiple defendants and one of the defendants is represented by or through the Office of the Public Defender, or where the Office of the Public Defender declines to provide representation to an indigent person entitled to representation under this article."

*State,* 51 Md.App. 538, 444 A.2d 1058 (1982), and Md. Rule 4–214[4] . . . [the trial court concluded that Stinnett was], in fact,

---

The 1976 Replacement Volume reflected the amendment of § 6(f), *see* 1st Special Session, Chapter 2, Section 4 (1973), to clarify to which courts the section applied, by adding, as a modifier of "any court," "mentioned in § 4(b)(2) of this article." The Revisor's Note to that section stated: "The amendment makes clear the right of the District Court, as well as other courts, to appoint counsel in appropriate cases." In 1984, a Corrective Bill modified § 6(c), but had no effect on § 6(f). Section 6(f) now reads as stated above.

4. Maryland Rule 4–214. Defense counsel.

(a) Appearance. Counsel retained or appointed to represent a defendant shall enter an appearance in writing within five days after accepting employment, after appointment, or after the filing of the charging document in court, whichever occurs later. An appearance entered in the District Court will automatically be entered in the circuit court when a case is transferred to the circuit court because of a demand for jury trial. In any other circumstance, counsel who intends to continue representation in the circuit court after appearing in the District Court must re-enter an appearance in the circuit court.

(b) Extent of duty of appointed counsel. When counsel is appointed by the Public Defender or by the court, representation extends to all stages in the proceedings, including but not limited to custody, interrogations, preliminary hearing, pretrial motions and hearings, trial, motions for modification or review of sentence or new trial, and appeal. The Public Defender may relieve appointed counsel and substitute new counsel for the defendant without order of court by giving notice of the substitution to the clerk of the court. Representation by the Public Defender's office may not be withdrawn until the appearance of that office has been stricken pursuant to section (c) of this Rule. The representation of appointed counsel does not extend to the filing of subsequent discretionary proceedings including petition for writ of certiorari, petition to expunge records, and petition for post conviction relief.

(c) Striking appearance. A motion to withdraw the appearance of counsel shall be made in writing or in the presence of the defendant in open court. If the motion is in writing, moving counsel shall certify that a written notice of intention to withdraw appearance was sent to the defendant at least ten days before the filing of the motion. If the defendant is represented by other counsel or if other counsel enters an appearance on behalf of the defendant, and if no objection is made within ten days after the motion is filed, the clerk shall strike the appearance of moving counsel. If no other counsel has entered an appearance for the defendant, leave to withdraw may be granted only by order of court. The court may refuse leave to withdraw an appearance if it would unduly delay the trial of the action, would be prejudicial to any of the parties, or otherwise would not be in the interest of justice. If leave is granted and the defendant is not

indigent and entitled to the appointment of an attorney." Judge Thompson issued an Order [5] specifically naming Deputy District Public Defender, John K. Northrop ("Northrop") or a "qualified attorney from its office or from its list of panel attorneys" to represent Stinnett. Noting the earlier contacts he had with the county commissioners, emphasizing their indication that the Board "had no funds to pay for any 'public defender fees that are not covered by the State of Maryland,'" and the local bar association, which declined to volunteer such representation, the trial judge added:

> "Recent conversation with their subsequent county attorney indicates that there is no change in that position, i.e., they will not pay anything in attorney compensation. The local bar association also indicated that its members were not willing to 'volunteer' their services in criminal cases." [6]

---

represented, a subpoena or other writ shall be issued and served on the defendant for an appearance before the court for proceedings pursuant to Rule 4–215. (Amended June 3, 1988, effective July 1, 1988; May 8, 2007, effective July 1, 2007).

5. This was an Amended Order ("Amended Order") issued *sua sponte* on July 14, 2008. Substantively it was the same as the initial order, issued, April 8, 2008, except that it specifically appointed Northrop to represent Stinnett. Judge Thompson previously had issued an "Order Appointing An Attorney Of the Office Of The Public Defender To Represent Indigent Defendant." Following the issuance of that Order, Deputy District Public Defender, John K. Northrop ("Northrop") wrote a letter to Stinnett, advising him that, notwithstanding the court order, the OPD would not be representing him. On April 25, 2008, he wrote, "despite Judge Thompson's having ordered this office to represent you, we will not be representing you at your Status Conference on August 8, 2008 and your Trial on September 9 and 10, 2008." The letter did indicate that Stinnett could re-apply for representation, but that a decrease in his income was a prerequisite to the OPD's reconsideration of Stinnett's eligibility. Two reminder letters reiterating the aforementioned information were also sent to Stinnett, on April 29, 2008 and again on June 19, 2008.

6. Aware that § 13 of the Public Defender Statute requires that "[f]unds for the carrying out of the provisions of this article shall be as provided in the State budget from time to time," and believing that court appointed counsel should be compensated, Judge Thompson appointed the Deputy District Public Defender or another attorney on the staff of the OPD, rather than a private attorney, whom, premised on information he obtained from the County, he surmised would not be compen-

sated. He also was aware, and influenced by the fact, based on representations from the County Bar Association, that the county attorneys would not act pro bono voluntarily. As we shall see, the trial court's duty is to determine whether a defendant is indigent and, if so, to appoint counsel. *See Thompson v. State,* 284 Md. 113, 129, 394 A.2d 1190, 1198 (1978); *Baldwin v. State,* 51 Md.App. 538, 552–553, 444 A.2d 1058, 1067–68 (1982). That responsibility is not dependent on a county's representations with regard to the availability of funds earmarked for attorneys fees for indigent criminal defendants or the willingness of the county bar to act in such cases pro bono. Rather, "[t]he court's obligation [is] to uphold the Constitution in the manner directed by the statute and by [the] Maryland Rule[s], and that obligation is not subject to or in any way dependent upon the level of appropriations received by the Public Defender. *See Bramlett v. Peterson,* 307 F.Supp. 1311, 1317 (M.D.Fla.1969), *citing Phillips v. Cole,* 298 F.Supp. 1049 (N.D.Miss.1968)." *Baldwin,* 51 Md.App. at 555, 444 A.2d at 1069.

During a period of severe budgetary constraints, much like those facing our State today, an opinion addressing the question, "how private counsel are to be paid when courts begin to appoint counsel in cases that previously would have been assigned to a panel attorney" was sought from the Office of the Attorney General of the State of Maryland. Office of the Atty. Gen. Md., Opinion No. 91–044, 1991 Md. AG LEXIS 54, at *2 (Oct. 4, 1991). The Attorney General opined that court-appointed attorneys, qualify as "special officers" that Maryland Code (1957, 2003 Replacement Vol.) § 2–102(a) of the Courts and Judicial Proceedings Article permit courts to appoint, and, therefore, should, and ordinarily are, compensated for their services by the subdivision, county or City of Baltimore, in which the appointing court is located. He relied on § 2–102(c) of the Courts and Judicial Proceedings Article, which provides that "[a] special officer's fee may be taxed as costs or paid by the county." 1991 Md. AG LEXIS 54, at *8. He also recognized the "common law obligation of Baltimore City and the counties to pay criminal court costs and fees when a defendant is convicted but indigent." *See State v. City of Baltimore,* 296 Md. 67, 72–73, 459 A.2d 585 (1983); *Mayor and City Council v. Pattison,* 136 Md. 64, 68, 110 A. 106 (1920). *But see Howell v. State,* 293 Md. 232, 242, n. 3, 443 A.2d 103, 108, n. 3 (1982) ("Art. 27A, § 13 provides: 'Funds for carrying out the provisions of this article shall be as provided in the State budget from time to time.' ").

In a memorandum dated October 4, 1991, addressed to the administrative judges of the courts authorized by the Public Defender Statute to appoint counsel upon the OPD's failure or refusal to do so, the author of this opinion utilized this AG Opinion and the statutory basis underlying it, § 2–102, to meet the funding crisis then facing the OPD. Specifically, the judges were instructed that the court, after considering the Public Defender's report, then would appoint the recommended attorney as a "special officer," pursuant to Maryland Code (1957, 1991 Supp.) Section 2–102(c) of the Courts and Judicial Proceedings Article, rather than as a panel attorney.

Under § 2–102(c), "[a] special officer's fee may be taxed as costs or paid by the county." 1991 Md. AG LEXIS 54, at * 8. *See generally*

Northrop filed a Notice of Appeal from the Order appointing him counsel for Stinnett, but did not seek to stay its effect pending the appeal.

Northrop did not appear at the status hearing in the Stinnett case. As a result, Judge Lidums found Northrop in direct contempt of court and fined him $10.00. He explained:

"The appeal is pending and Mr. Northrop did tell me that he would not be here and he said that he anticipated that there would be a finding of contempt, by virtue of his failure to be here ... He is not present. He is, therefore found to be in direct Contempt of Court. He's in proceedings and the Court imposes, as punishment, a fine of $10.00."

Judge Lidums then filed an Order of Contempt, which he handwrote, as follows:

---

*County Commissioners v. Melvin*, 89 Md. 37, 42 A. 910 (1899). Because the defendants are indigent, and therefore cannot be assessed costs, the appropriate county (or Baltimore City) will have to be billed for the attorney's fees. *See* Article 1 § 14. Section 2–102(c) of the Courts and Judicial Proceedings Article has been interpreted by the Attorney General as follows:

"Obviously, an indigent defendant, by definition, could not pay these costs even if the court chose to tax them. *See* Rule 4–353. Thus, as a practical matter, the fee for counsel appointed to represent an indigent defendant would be payable by the county whose State's Attorney brings the prosecution."

1991 Md. AG LEXIS 54, at *8–9. *See also County Commissioners v. Melvin*, 89 Md. 37, 42 A. 910 (1899).

The court, of course, retains its inherent authority to appoint another attorney as a special officer if, in its judgment, the attorney is qualified for the appointment. If another attorney is appointed, a request for reimbursement should also be made to the county (or Baltimore City).

The Attorney General's opinion, to be sure, also acknowledges that lawyers are officers of the court and "in the absence of a reasonable excuse, bound to perform the duty assigned him." 1991 Md. AG LEXIS 54, at *7 (quoting, *Worcester County v. Melvin*, 89 Md. 37, 40, 42 A. 910 (1899)). Thus, despite constitutional concerns, it concluded that the majority view is "a lawyer has no constitutional right to refuse an uncompensated appointment." *Id.*, at *9–10. *In re Spann*, 183 N.J.Super. 62, 443 A.2d 239 (App.Div.1982). In times of economic hardship, when the county lacks the funds to provide compensation, therefore, it is believed "appointed counsel will have to serve without fee." *Id.*, at *9. This, however, is not the issue in this case.

"By prior Order of Court, John K. Northr[o]p, Public Defender was appointed to represent Defendant; Northrop failed to appear at status conference on 8–8–08, after being notified.

"Court finds direct contempt; fine of $10.00 imposed."

Subsequently, Stinnett entered a guilty plea to the first degree burglary count, which the court accepted, and was sentenced to a three-year suspended sentence of imprisonment and two years unsupervised probation. Stinnett did not appeal the judgment thus entered. On the other hand, Northrop noted an appeal of the August 8, 2008 Order finding him in direct contempt to the Court of Special Appeals. He also filed with this Court, a petition for Writ of Certiorari, in which he raised two questions:

"(1) Did the Trial Court err in ordering public defendant staff attorney/s to represent a criminal defendant in a criminal case after the public defender declined to provide representation in the case; and (2) Did the trial court err in finding petitioner in contempt?"

This Court granted his petition prior to proceedings in the intermediate appellate court. *Public Defender v. State,* 407 Md. 275, 964 A.2d 675 (2009).

II. *Legal Analysis*

A. *Mootness*

The State is correct. The underlying case from which today's issue arises has been finally adjudicated. For the reasons articulated by the majority, however, this Court is not precluded from considering this case on its merits. This case presents an exception to the general rule governing mootness. In particular, the issue promises to be a recurring matter of public concern, which, unless decided, will continue to evade review. *See generally In re Julianna B.,* 407 Md. 657, 665–66, 967 A.2d 776, 781 (2009); *Suter v. Stuckey,* 402 Md. 211, 220, 935 A.2d 731, 736 (2007); *Arrington v. Dep't of Human Res.,* 402 Md. 79, 91, 935 A.2d 432, 439–40 (2007); *Coburn v. Coburn,* 342 Md. 244, 250, 674 A.2d 951, 954 (1996) ("This

Court in rare instances, however, may address the merits of a moot case if we are convinced that the case presents unresolved issues in matters of important public concern that, if decided, will establish a rule for future conduct."); *Attorney General v. Anne Arundel County School Bus Contractors Ass'n*, 286 Md. 324, 328, 407 A.2d 749, 752 (1979) ("Of course, a court may decide a moot question where there is an imperative and manifest urgency to establish a rule of future conduct in matters of important public concern, which may frequently recur, and which, because of inherent time constraints, may not be able to be afforded complete appellate review."); *Lloyd v. Board of Supervisors of Elections*, 206 Md. 36, 43, 111 A.2d 379, 382 (1954) ("[I]f the public interest clearly will be hurt if the question is not immediately decided, if the matter involved is likely to recur frequently, and its recurrence will involve a relationship between government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision, then the Court may find justification for deciding the issues raised by a question which has become moot, particularly if all these factors concur with sufficient weight.").

### B. *The Appointment*

This Court often is required to consider matters that are riddled with complexity, the result of which, although consistent with the law, members of this Court would not prefer. In those situations, the Court cannot, and should not, avoid its responsibility to ensure that the questions are resolved in full accordance with the law. It may not, therefore, adopt simple solutions that do not enjoy legal support, or stretch logic to the breaking point, for the sake of reaching a preferred resolution. Sadly, that is precisely what the majority does today.

This case presents the question of the "division of labor between the courts and the local OPD, with regard to assuring legal representation to indigent individuals." *Office of the Public Defender v. State*, 413 Md. 411, 429, 993 A.2d 55, 66

(2010). The majority, after a careful manipulation of legal principles and relevant, indeed controlling case law, holds:

"the Circuit Court for Cecil County did not exceed its authority when it appointed John K. Northrop ('Northrop'), the Deputy District Public Defender for Cecil County, or a member of his office or a panel attorney, to represent Jason Flynn Stinnett ('Stinnett'), a criminal defendant whom the Circuit Court found qualified as indigent under the Maryland Code, but to whom representation had been denied previously and wrongfully by the local OPD."

*OPD v. State*, 413 Md. at 415, 993 A.2d at 57. This holding is contrary to the statutory language governing the OPD, namely Article 27A §§ 4(a) (placing the primary duty on the OPD to provide indigent representation) and 6(f) (preserving in certain enumerated courts the authority to appoint counsel when the OPD cannot or does not do so) and to this Court's previous holdings, both of which inform the trial courts with regard to their responsibility when the OPD declines, properly or improperly, to provide representation. Together, they teach that the courts do not have oversight over the eligibility determination decisions of the OPD. The majority's disregard of precedent and statutory pronouncements not only is troubling, but it tramples on the doctrine of separation of powers.

### 1. *Applicable Caselaw*

The Court previously has addressed the juxtaposition of appointment responsibility between the OPD and the State's trial courts in *Thompson v. State*, 284 Md. 113, 394 A.2d 1190 (1978). Accordingly, and indeed, *Thompson* and its progeny control the result of this case.

In *Thompson*, the defendant had been convicted in the District Court of Maryland, sitting in Montgomery County, of shoplifting and assault and battery. 284 Md. at 114, 394 A.2d at 1191. He appealed that conviction to the Circuit Court for Montgomery County. Although represented by the OPD in the District Court, he posted bond pending appeal and appeared without counsel in the Circuit Court. *Id.* at 116, 394

A.2d at 1191. The OPD determined that he did not qualify for the services of the OPD, *id.* at 118, 394 A.2d at 1192–93, and the trial court, having refused the invitation by the OPD to "leave it up to the Court as to whether or not the Court wanted [it] to appoint a lawyer on his behalf," *id.* at 118, 394 A.2d at 1193, advised the defendant to get counsel and of the consequences of not doing so. *Id.* at 119, 394 A.2d at 1193. After some delay occasioned by the defendant's expressed intent, but unsuccessful attempt, to get private counsel, the case proceeded to trial and sentence with the defendant unrepresented. *Id.* at 121–122, 394 A.2d at 1194.

Although there were three issues presented in *Thompson,* the dispositive one, namely, "[d]id the trial court err in not fully complying with the mandate of Rule 723 of the Maryland Rules of Procedure by not properly advising . . . Thompson of his rights and obligations as contained therein?," [7] *id.* at 114, 394 A.2d at 1191, related to the advice required by Rule 723 of the Maryland Rules of Procedure (1978) to be given to a defendant, by the court, upon his or her appearance in court not represented by counsel and before accepting or finding a waiver of counsel. Maryland Rule 723, Appearance–Provision for or Waiver of Counsel,[8] after requiring in § (a) that a defendant appear in court at the time and place specified in the summons or other writ when a charging document is filed against him or her, prescribed the inquiry requirements for several scenarios in which the defendant appeared without counsel: when the defendant appeared without counsel, § (b) [9]

---

7. The other two were:
    " '(1) [d]id the trial court err in holding that . . . Thompson had impliedly waived his constitutional right to counsel when [he] appeared for trial without an attorney and objected to proceeding to trial without legal representation?' and '(3) [d]id the trial court err in not fully complying with the mandate of Rule 735 c of the Maryland Rules of Procedure when the court permitted . . . Thompson to be tried by the court instead of a jury?' " *Id.* at 114 n. 1, 394 A.2d at 1191 n. 1.

8. This Rule is the precursor to Maryland Rules 4–213 and 215.

9. Maryland Rule 723(b), as relevant, provided:

; when the defendant appeared without counsel and indicated that he or she "does not want representation," § (c),[10] and

---

· "Appearance Without Counsel. When a defendant appears pursuant to section a of this Rule and is not represented by counsel, the court shall:

\* \* \*

"2. Advise the defendant that he has a right to be represented by counsel at every stage of the proceedings;

"3. Advise the defendant of the matters required by subsections 1, 2 and 3 of section c of this Rule;

"4. Advise the defendant who desires counsel that he must retain the services of counsel and have counsel enter an appearance for him within 15 days;

"5. Advise the defendant that if he finds he is financially unable to retain the service of private counsel, he should apply to the Public Defender as soon as possible for a determination of his eligibility to have counsel provided for him by the Public Defender;

"6. Advise the defendant that if the Public Defender declines to provide representation, the defendant should immediately notify the clerk of the court so that the court can determine whether it should appoint counsel pursuant to Article 27A, section 6(f), of the Maryland Code;

"7. Advise the defendant that if counsel does not enter an appearance within 15 days, a plea of not guilty will be entered pursuant to section b 3 of Rule 731 (Pleas), and the defendant's case will be scheduled for trial. The court shall also advise the defendant that if he appears for trial without counsel, the court could determine that he has waived his right to counsel by neglecting or refusing to retain counsel or to make timely application to the Public Defender for counsel, and in the event, the case would proceed with defendant unrepresented by counsel."

10. Section (c) provided:

"When a defendant indicates a desire or inclination to waive counsel, the court may not accept the waiver until it determines, after appropriate questioning on the record in open court, that the defendant possesses the intelligence and capacity to appreciate the consequences of his decision, and fully comprehends:

"1. The nature of the charges against him, any lesser included offenses, and the range of allowable penalties, including mandatory and minimum penalties, if any;

"2. That counsel can render important assistance to him in determining whether there may be defenses to the charges or circumstances in mitigation thereof, and in preparing for and representing him at trial;

"3. That even if the defendant intends to plead guilty, counsel may be of substantial assistance in developing and presenting information which could affect the sentence or other disposition;

when the defendant appeared without counsel subsequent to his initial appearance, § (d). We concluded that the trial judge violated Rule 723 in three particulars, by failing to "advis[e] Thompson pursuant to § (b), in not conducting the waiver inquiry required by § (c), and in not making a determination upon proper considerations whether Thompson was eligible to have it appoint counsel upon the refusal of the Public Defender to provide representation," *id.* at 130–31, 394 A.2d at 1199, either one of which constituted reversible error. *Id.* at 130, 394 A.2d at 1199. It is the latter that is of interest in this case.

As to Rule 723(c), which implements the right to counsel, including appointed counsel, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, *Thompson,* 284 Md. at 122–23, 394 A.2d at 1194–95,

"The inquiry required to be made and the test to be met under § c before the court may accept a waiver of counsel applies not only to a defendant's appearance pursuant to § a but also *to any proceeding at which he appears without counsel thereafter.* In such event, the court is prohibited from proceeding before determining whether the defendant *at that time* desires to waive counsel or has waived counsel. § d 2. By § e, there must be a record of compliance with respect to §§ b, c and d." (footnotes omitted).

*Id.* at 126, 394 A.2d at 1196, citing Maryland Rule 723 § (d)(2) ("If the defendant appears in court without counsel, at any proceeding after his appearance pursuant to section a of this Rule, the court may not proceed before determining whether the defendant at that time desires to waive counsel, or has waived counsel, either affirmatively or by neglecting or refusing to obtain counsel."). Thus, compliance with § (c), the Court pointed out, was a prerequisite to proceeding, whenever the defendant appeared in court without counsel.

---

"4. That if the defendant is found to be financially unable to retain private counsel, the Public Defender or the court would, if the defendant wishes, provide counsel to represent him."

One of the requirements of § (c) was subsection 4, which mandated that the court advise the defendant that, if he or she were "found to be financially unable to retain private counsel, the Public Defender or the court would, if the defendant wishes, provide counsel to represent him [or her]." Pursuant to this requirement, both the court and the OPD have a responsibility to provide an indigent defendant with representation. This Court concluded, with regard to the OPD, that, were a defendant indigent, "it was the duty of the Public Defender to provide legal representation for him [or her]." 284 Md. at 127, 394 A.2d at 1197. Informing that decision, it pointed out, are the questions whether the crime charged is a serious one, citing Article 27A, § 4(b)(2) [11], whether the defendant is indigent as defined by Article 27A, § 2(f), [12] and whether he or she is otherwise eligible, applying the criteria of Article 27A, § 7(a) and (b). [13]

---

**11.** Md.Code (1957, 1976 Repl. Vol.) art. 27A, § 4(b)(2) provides:

"(b) Legal representation shall be provided indigent defendants in the following proceedings:

\* \* \*

"(2) Criminal or juvenile proceedings, where the defendant is charged with a serious crime, before the District Court of Maryland, the Supreme Bench of Baltimore City, the various circuit courts within the State of Maryland, the Court of Special Appeals of Maryland, and the Court of Appeals of Maryland."

**12.** Md.Code (1957, 1976 Repl. Vol.) art. 27A, § 2(f) provides:

"(f) 'Indigent' means any person taken into custody or charged with a serious crime as herein defined under the laws of the State of Maryland or the laws and ordinances of any county, municipality, or Baltimore City, who under oath or affirmation subscribes and states in writing that he is financially unable, without undue hardship, to provide for the full payment of an attorney and all other necessary expenses of legal representation."

**13.** Md.Code (1957, 1976 Repl. Vol.) art. 27A, § 7 provides, in relevant part:

"(a) Eligibility for the services of the Office of the Public Defender shall be determined on the basis of the need of the person seeking legal representation. Need shall be measured according to the financial ability of the person to engage and compensate competent private counsel and to provide all other necessary expenses of representation. Such ability shall be recognized to be a variable depending on the nature, extent and liquidity of assets; the disposable net income of

The court's responsibility is similar, to "determin[e] whether to appoint counsel under Code, art. 27A, § 6(f)." [14] We observed, in that regard:

"there is the clear duty imposed on the court, in order to decide whether it should appoint counsel, upon the Public Defender declining to do so, to make its own independent determination whether a defendant is indigent and otherwise eligible to have counsel provided. It could not properly fulfill this duty without considering facts material and relevant to the issue."

284 Md. at 129, 394 A.2d at 1198.

In *Thompson,* more than merely acknowledging that both the OPD and the courts have a responsibility to ensure that indigent defendants are afforded representation, this Court recognized, even if it did not state it expressly, that the responsibility was a separate responsibility, its discharge entrusted fully to the OPD and the court, as required, and that the responsibility, or its discharge, of one neither infringed nor superseded the responsibility or discharge of the other. So it was that the Court observed and instructed:

the defendant; the nature of the offense; the effort and skill required to gather pertinent information; the length and complexity of the proceedings; and any other foreseeable expenses.

\* \* \*

"(b) The Office of the Public Defender shall make such investigation of the financial status of each defendant at such time or times as the circumstances shall warrant, and in connection therewith the office shall have the authority to require a defendant to execute and deliver such written requests or authorizations as may be necessary under applicable law to provide the office with access to records of public or private sources, otherwise confidential, as may be needed to evaluate eligibility. The office is authorized to obtain information from any public record office of the State or of any subdivision or agency thereof upon request and without payment of any fees ordinarily required by law."

14. Md.Code (1957, 1976 Repl.Vol.) art. 27A, § 6(f) provides:

"Nothing in this article shall be construed to deprive [a circuit court] of its authority to appoint an attorney to represent an indigent person ... where the Office of the Public Defender declines to provide representation to an indigent person entitled to representation under this article."

"The Public Defender wanted to leave it up to the court, making clear that if the court so ordered he would provide representation. The court refused to so order, properly we believe, on the ground that the question whether the Public Defender represented a particular defendant was for the Public Defender and not for the court."

*Id.* at 128, 394 A.2d at 1197. That also was the message being conveyed by this Court's discussion of the trial court's approach to the defendant's right to representation [15]:

"The record before us does not show what investigation was made by the Office of the Public Defender and all that was considered by it with respect to Thompson's eligibility *vel non.* It seems, however, that the primary reason for declining to represent him was that a surety bond had been posted for him. As we have seen, the Public Defender raised this specter at the first hearing on 10 February 1978 when he mentioned the bond after stating that Thompson was 'technically' eligible for the services of the Public Defender. Whereupon, Thompson flatly declared that the Public Defender had told him that 'if I had somebody to post the money out on bond, I should get my own lawyer. That's what he told me.' The judge then presiding expressly did not dispute that the Public Defender had so stated. Assistant State's Attorney Dean represented to the court at the hearing on 19 April that '[t]he amount of the bond that [Thompson] made indicated to the Public Defender's Office that he wasn't really as indigent as expected, whereas he represented.' The judge originally in the case was completely content with the Public Defender's conclusion, whatever it may have been based upon, that Thompson was not entitled to have representation provided—'you tell me he is not eligible and that is good enough for me.' This view governed the court's action in the face of an utter lack of the

---

**15.** The point of this discussion was not to suggest that the trial court had a review responsibility over the OPD's eligibility determination; rather it was simply to make clear that, after the OPD had made its eligibility determination, the court was required to make another, separate and independent one.

data contemplated by art. 27A, § 7, the absence of any expression by the Office of the Public Defender of the reasons why it declined to provide representation, and the fact that the Public Defender had represented Thompson in the District Court. . . . The judge made no attempt to determine whether the refusal of the Office of the Public Defender to provide representation was despite Thompson's eligibility to have counsel provided. Neither judge thereafter involved in the case took any steps to determine whether Thompson was in fact an indigent person entitled to representation. The court was obligated to make that determination in the circumstances. As we have indicated, if Thompson were indigent and otherwise entitled to assistance of counsel, the law, implemented by statute and our rules of procedure, required the court to appoint an attorney when the Office of the Public Defender declined to provide counsel. The failure of the court to determine whether Thompson was eligible to have counsel provided was reversible error." (footnotes omitted).

284 Md. at 129–30, 394 A.2d at 1198–99.

The message was received.[16] *See Maus v. State,* 311 Md. 85, 114 n. 16, 532 A.2d 1066, 1080 n. 16 (1987); *Howell v. State,*

---

**16.** Notably, the *Thompson* decision was issued in 1978, some 32 years ago. Thereafter, Maryland appellate courts have not deviated from, but confirmed, the division of labor in the relationship between the OPD and the trial courts that *Thompson* defined. It is well-established that the Legislature is presumed to be aware of our decisions and, therefore, should it have believed that a decision has misinterpreted an enactment, such as Art. 27A, § 6(f), it could have, and likely would have, taken legislative action to correct it. *See Williams v. State,* 292 Md. 201, 210, 438 A.2d 1301, 1305 (1981); ("The General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation."); *People's Ins. Counsel Div. v. Allstate Ins. Co.,* 408 Md. 336, 364–65, 969 A.2d 971, 987 (2009); *see Romm v. Flax,* 340 Md. 690, 698, 668 A.2d 1, 4 (1995). We also pointed out in *Williams,* that "[t]his presumption is particularly strong whenever, after statutory language has been interpreted by this Court, the Legislature re-enacts the statute without changing in substance the language at issue." 292 Md. at 210, 438 A.2d at 1305, citing *Harbor Island Marina v. Calvert County,* 286 Md. 303, 322–323, 407 A.2d 738,

293 Md. 232, 242, 443 A.2d 103, 108 (1982); *Davis v. State,* 100 Md.App. 369, 380–81, 641 A.2d 941, 947 (1994); *Baldwin v. State,* 51 Md.App. 538, 552–553, 444 A.2d 1058, 1067–68 (1982). *See also Miller v. Smith, Attorney General of State,* 115 F.3d 1136, 1142 (4th Cir.1997). In *Baldwin,* Judge Alan Wilner, for the Court of Special Appeals, explicating *Thompson,* stated expressly:

> "In *Thompson v. State,* 284 Md. 113, 394 A.2d 1190 (1978), the Court of Appeals seemed to hold that if the Public Defender declines to represent a defendant—even on grounds of non-eligibility (as opposed to a potential conflict of interest)—the court has no authority to order him to provide representation. Upon that premise, the question before us is not whether the Public Defender erred in declining representation but whether the court was derelict in discharging its own responsibility to assure compliance with appellant's Constitutional right of counsel, in accordance with its authority under § 6(f) of art. 27A."

51 Md.App. at 552–553, 444 A.2d at 1067. The intermediate appellate court stated the reasoning underlying that statement: noting the *Thompson* Court's approval of the rejection by the trial court of the OPD's invitation to the court to order it to provide representation and the basis for that approval, it concluded, "by logical extension, that, although the court may appoint any other qualified counsel to represent an indigent defendant, it may not appoint the Public Defender against his wish." *Id.* at 553 n. 11, 444 A.2d at 1067 n. 11. In *Davis,* the Court of Special Appeals again opined:

---

749 (1979); *Director, Patuxent Institution v. Cash,* 269 Md. 331, 345, 305 A.2d 833, 841 (1973) *cert. denied* sub *nom. Vucci v. Boslow, Institution Director,* 414 U.S. 1136, 94 S.Ct. 881, 38 L.Ed.2d 762 (1974); *Macke Co. v. St. Dep't of Assess. & T.,* 264 Md. 121, 132–133, 285 A.2d 593, 599 (1972); *Stack v. Marney,* 252 Md. 43, 49, 248 A.2d 880, 884 (1969). As we have seen, by Chapter 15, section 1 of the Acts of 2008, effective October 1, 2008, the General Assembly repealed the Public Defender Act and re-enacted it, with the provision at issue unchanged, as Subtitle 2, Title 16 of the Criminal Procedure Article. I submit that the Legislature's silence on this point speaks volumes.

"In Maryland, there are two options available to defendants in criminal cases who are financially unable to retain their own counsel. The first option is representation by the Public Defender's Office as authorized by Maryland Annotated Code, Article 27A, § 4 (1993 Repl. Vol.). If the Public Defender's Office determines it is unable to represent a defendant due to his or her income, the court must conduct its own inquiry as to whether the defendant qualifies for a court-appointed counsel. Md.Code Ann. Art. 27A, § 6(f) (1993 Repl. Vol.); *Baldwin v. State*, 51 Md.App. 538, 553, 444 A.2d 1058 (1982). *cert. denied*, 299 Md. 425, 474 A.2d 218 (1984). The necessity for this independent court evaluation stems from the judiciary's role as the 'ultimate protector' of the rights awarded under the Constitution, including the right to counsel. *Baldwin*, 51 Md.App. at 552, 444 A.2d 1058."

100 Md.App. at 380–81, 641 A.2d at 947.

The majority does not agree that the appointment responsibilities of the court and the OPD are separate and distinct and that the court does not review the OPD's determination of ineligibility. Indeed, characterizing this Court's statement in *Thompson* as *dicta*, but without clearly saying why, it expressly holds that the trial court's responsibility extends to inquiring into the correctness of the OPD's indigency, and thus representation, decision:

"the OPD and the Dissent rely heavily on the above quoted language,[17] and other dicta in *Thompson* and *Baldwin*, . . .

---

**17.** The majority refers here to the *Thompson* Court's holding and the *Baldwin* court's later recitation and reliance on the *Thompson* holding to support its own holding regarding the OPD. The majority states:

"We reversed the trial court, holding that it erred by failing to determine independently whether to appoint counsel under Art. 27A, § 6(f), . . . following the local OPD's denial of representation. [*Thompson*, 284 Md.] at 128, 394 A.2d at 1197. Specifically, we observed that 'there is a clear duty imposed on the court, in order to decide whether it should appoint counsel, upon the Public Defender declining to do so, to make its own independent determination whether a defendant is indigent and otherwise eligible to have counsel provided.' *Id.* at 129, 394 A.2d at 1198. Regarding the OPD's

to support their contentions that, where the OPD declines representation, a reviewing court is powerless to correct a manifest error in the local OPD's determination of eligibility by appointing the local OPD as counsel for the indigent defendant. . . . Such dicta is wholly unpersuasive, particularly in light of the statutory scheme designed by the General Assembly to govern the respective responsibilities of the OPD and the courts in determining whether a criminal defendant qualifies as indigent and whether such individual is entitled to representation paid for by the taxpayers." (footnotes omitted).

*OPD v. State*, 413 Md. at 430–31, 993 A.2d at 67. I disagree with the majority. Before explaining why the majority is wrong, however, it is necessary to address its assertion that statements in *Thompson* and *Baldwin* indicating that the appointment responsibilities of the court and the OPD are separate and distinct and that the court may not appoint the OPD are *dicta*.

Distinguishing between what is *dicta* and what is the court's holding can be challenging. Without understanding what dicta is, it is not possible to know or appreciate the difference. This Court considered the meaning of *dicta* in *Carstairs v. Cochran*, 95 Md. 488, 52 A. 601 (1902). There, concerned with

---

representation to the court that it would represent the defendant if the court so ordered, we stated, in dicta and without citation to authority, that '[t]he court refused to so order, properly we believe, on the ground that the question whether the Public Defender represented a particular defendant was for the Public Defender and not for the court.' *Id.* at 128, 394 A.2d at 1197.

"Four years after our decision in *Thompson*, the Court of Special Appeals, in *Baldwin*, observed, also in dicta, that *Thompson* 'seemed to hold that if the Public Defender declines to represent a defendant—even on grounds of non-eligibility (as opposed to a potential conflict of interest)—the court has no authority to order him to provide representation.' *Baldwin*, 51 Md.App. at 552, 444 A.2d at 1067. In a footnote, the intermediate appellate court conjectured further that '[i]t would appear from [the language of *Thompson*], by logical extension, that, although the court may appoint any other qualified counsel to represent an indigent defendant, it may not appoint the Public Defender against his wish.' *Id.* at 552 n. 11, 444 A.2d at 1067."

*OPD v. State*, 413 Md. at 429–30, 992 A.2d at 66–67.

whether the Court's discussion in *Monticello Distilling Co. v. Baltimore City,* 90 Md. 416, 45 A. 210 (1900), interpreting the Act of 1892, was dicta or holding, the Court rejected the argument that *Monticello* was decided on one "sole ground" and that "the expression of opinion upon any other point was not involved in the decisive objection on which the judgment was reversed, and was therefore '*obiter dictum,*' " *Carstairs,* 95 Md. at 499, 52 A. at 601, explaining:

> "We cannot agree that the expression of opinion referred to was an *obiter dictum.* . . . It may be difficult to frame a concise definition of an *obiter dictum* applicable to every such expression of opinion, and some Courts incline to the rule that the most deliberate expression of opinion, upon a question distinctly raised in the record, and fully argued by counsel, may nevertheless be regarded as a *dictum,* unless essential to the actual disposition made of the case. But as Bouvier well says: 'It is difficult to see why, in a philosophic point of view, the opinion of the Court is not as persuasive on all the points which were so involved in the cause that it was the duty of counsel to argue them, and which were deliberately passed on by the Court, as if the decision had hung upon but one point;' and in Maryland the rule is in accord with this view. In *Alexander v. Worthington,* 5 Md. 471 [1854], it is said: 'All that is necessary in Maryland to render the decision of the Court of Appeals authoritative on any point decided, is to show that there was an application of the judicial mind to the precise question adjudged;' and in *Michael v. Morey,* 26 Md. 239 [1867], it was said that a decision there cited, could not be said to be *obiter dictum,* 'as the question was directly involved in the issues of law raised by the demurrer to the bill, and the mind of the Court was directly drawn to, and distinctly expressed upon the subject.' "

*Carstairs,* 95 Md. at 499–500, 52 A. at 601–02. These principles concerning dicta were recently reiterated by in *Schmidt v. Prince George's Hospital,* 366 Md. 535, 551–52, 784 A.2d 1112, 1121 (2001). Before citing to the *Carstairs* language above, Judge Harrell, writing for the Court noted:

"When a question of law is raised properly by the issues in a case and the Court supplies a deliberate expression of its opinion upon that question, such opinion is not to be regarded as *obiter dictum*, although the final judgment in the case may be rooted in another point also raised by the record. *See Scott v. State*, 297 Md. 235, 256, 465 A.2d 1126, 1137 (1983) (Murphy, C.J., dissenting); *Carstairs v. Cochran*, 95 Md. 488, 499, 52 A. 601, 601 (1902) (citing *Monticello Distilling Co. v. City of Baltimore*, 90 Md. 416, 45 A. 210 (1900))."

*Id.* at 551, 784 A.2d at 1121. Additionally, *Black's Law Dictionary* notes that *obiter dictum*, which is Latin for "something said in passing" is defined as: "a judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." 1177, (9th ed. 2009).

Inconsistent with this Court's interpretation and the plain meaning of *dicta*, the majority opines:

"Regarding the OPD's representation to the court that it would represent the defendant if the court so ordered, we stated, in dicta and without citation to authority, that '[t]he court refused to so order, properly we believe, on the ground that the question whether the Public Defender represented a particular defendant was for the Public Defender and not for the court.' [*Thompson*, 284 Md.] at 128, 394 A.2d at 1197.

"Four years after our decision in *Thompson*, the Court of Special Appeals, in *Baldwin*, observed, also in dicta, that *Thompson* 'seemed to hold that if the Public Defender declines to represent a defendant—even on grounds of non-eligibility (as opposed to a potential conflict of interest)—the court has no authority to order him to provide representation.' *Baldwin*, 51 Md.App. at 552, 444 A.2d at 1067.... This question, however, was not at the core of *Baldwin*."

*OPD*, 413 Md. at 430, 992 A.2d at 66–67. The majority is wrong for several reasons.

The question the *Thompson* Court was asked to resolve and the analysis it employed to resolve it make clear that the identified statement was not dicta. Indeed, it required the Court to define the role and the duty of the trial court in the process. The issue in *Thompson* related to Rule 723, the whole of it, not just certain provisions. *Thompson*, 284 Md. at 114, 394 A.2d at 1191 ("The issue posed by the second question, '[d]id the trial court err in not fully complying with the mandate of Rule 723 of the Maryland Rules of Procedure by not properly advising . . . Thompson of his rights and obligations as contained therein?'"). As we have seen, the Thompson Court recognized that its shared responsibility, acknowledged by Rule 723(c)(4), to provide counsel to indigent defendants, was grounded in Art. 27A § 6(f), which it construed as imposing on the court not simply the responsibility of appointing counsel when the OPD declined to do so, but also required, as a prerequisite to doing so, that it independently determine the defendant's indigency. It was in explaining this responsibility that the Court said,

"The Public Defender wanted to leave it up to the court, making clear that if the court so ordered he would provide representation. The court refused to so order, properly *we believe*, on the ground that the question whether the Public Defender represented a particular defendant was for the Public Defender and not for the court,"

*id.* at 128, 394 A.2d at 1197 (emphasis added), thus, approving of the court's rejection of the OPD's offer to follow its order. The disputed language, therefore, is not *dicta.*

The majority also overlooks the inescapable relationship between Rule 723 and Art. 27A § 6(f) that *Thompson* recognizes:

"When a defendant appears pursuant to § a of Rule 723, § b 6 requires the court to [a]dvise the defendant that if the Public Defender declines to provide representation, the defendant should immediately notify the clerk of the court so that the court can determine whether it should appoint counsel pursuant to Article 27A, section 6(f) of the Maryland Code."

*Id.* at 128–29, 394 A.2d at 1198. Viewed in context with Rule 723 and Art. 27A § 6(f), the statement was not just relevant, but essential to the *Thompson* holding.

Maryland courts have acknowledged that *Thompson* stood for the proposition now being dismissed as dicta. Considering the question whether the " 'trial court abused its discretion, and thus denied [the defendant] rights secured ... by the Sixth and Fourteenth Amendments of the Constitution of the United States, Article 21 of the Maryland Declaration of Rights, and Md.Code Ann., Article 27A, § 6(f),' " *Baldwin,* 51 Md.App. at 545, 444 A.2d at 1063, the Court of Special Appeals held:

> "By declining to appoint counsel, the court failed to discharge its responsibility under § 6(f) of art. 27A, proceeded to trial in contravention of Maryland Rule 723, and thus effectively denied appellant his Federal and State Constitutional right to counsel."

*Id.* at 556, 444 A.2d at 1069. In reaching its holding, the court referenced the *Thompson* precedent, which it interpreted as holding that a trial court could not "appoint the Public Defender against his wish." *Id.* at 552, n. 11, 444 A.2d at 1067. It then stated:

> "Upon that premise, the question before us is not whether the Public Defender erred in declining representation but whether the court was derelict in discharging its own responsibility to assure compliance with appellant's Constitutional right of counsel, in accordance with its authority under § 6(f) of art. 27A."

*Id.* at 552–53, 444 A.2d at 1067.

It is clear and apparent, by the intermediate appellate court's reference, in *Baldwin,* that it understood *Thompson* to stand for the proposition that a trial court could not appoint the OPD to represent an individual it had declined to represent. That proposition was understood to be at the core of the decision, it was holding, not *dicta.*

## 2. *The Public Defender Statute*

The majority's holding is contrary to the Public Defender Statute. In fact, the majority's analysis proceeds on faulty premises. First, noting that:

"[a]t the outset, it is clear to this Court, as it was to the Circuit Court in the proceedings below, that the local OPD denied erroneously representation to Stinnett. . . . Rather than apply the statutorily-mandated criteria for determining indigency provided by Art. 27A, § 7(a), the local OPD, in denying representation to Stinnett on this record, relied solely on certain language contained in COMAR 14.06.03.05A and D(2). . . . [18] [T]he local OPD applied the incorrect standard for determining indigency of applicants and erred, both legally and factually, in concluding that Stinnett did not qualify for representation by its attorneys,"

*OPD v. State,* 413 Md. at 424–26, 992 A.2d at 63–64 (footnote omitted), the majority reasons that this error validated the trial court appointment of the OPD. *OPD v. State,* 413 Md. at 428–29, 992 A.2d at 66. Moreover, relying on *Baldwin,* it reasons that the OPD's indigency determination is only "initial," "not final," because the "courts must, of necessity, be the ultimate protector of those underpinnings[.]" *OPD v. State,* 413 Md. at 432, 992 A.2d at 67–68 (quoting *Baldwin,* 51 Md.App. at 552, 444 A.2d at 1067). The third faulty premise is that Article 27A, § 6(f), by requiring trial courts to make an independent determination as to whether a defendant is indigent, *OPD v. State,* 413 Md. at 432, 992 A.2d at 68 and despite "not specify[ing] either the procedure or the standard to be employed by the court," *id.* at 432, 992 A.2d at 68, provides "a

---

**18.** The majority acknowledges—"we are not called on in the present case to address directly the legal validity of COMAR 14.06.03.05A and D(2)." *OPD v. State,* 413 Md. at 426, n. 12, 992 A.2d at 64, n. 12. I would add that we are not called on to address that issue even indirectly. Unfortunately, the majority fails to heed its own observation. The only issue before this Court is whether the trial court has the authority to appoint the OPD. Whether the statute was misapplied by the OPD, which statute applied and what the remedy for misapplication simply is not before this Court. Nor is the issue of the extent of the trial court's authority to review the OPD's eligibility determinations.

clear oversight and corrective role for the courts in the indigency determination and appointed-counsel process." *OPD v. State*, 413 Md. at 432, 992 A.2d at 68. Finally, the majority emphasizes that Art. 27A, § 6(f) "contains no language indicating a legislative intent to prohibit the appointment of an attorney from the local OPD by a trial court,[19]" *OPD v. State*, 413 Md. at 432–33, 992 A.2d at 68, arguing that, to deny the trial court the authority to appoint the OPD, would require this Court to read " 'other than the local OPD' " into the statute, in violation of "sound canons of statutory interpretation." *Id.* at 433, 992 A.2d at 68.[20]

a. *The Statutory Text and its Legislative Purpose.*

The majority's holding runs contrary to the mandates under the Public Defender Statute. In enacting this statute, the Legislature clearly announced its purpose and, subject to the right of local governments to opt out and provide their own public defender system,[21] to whom it was entrusting implementation:

---

**19.** As indicated, *see* note 13, "The General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation." *Williams v. State*, 292 Md. 201, 210, 438 A.2d 1301, 1305 (1981). Accordingly, I submit, it is not necessary to read anything into the statute, the Legislature, by not "correcting" this Court's interpretation of Article 27A § 6(f), has approved it.

**20.** The logic of this analysis escapes me. My rejoinder, which should come as no surprise, is, given the provisions in § § 7 and 6(f), giving the OPD the authority to decline representation, the majority has read into § 6(f), "including the local OPD."

**21.** Section 14, *Local exemptions*, provided:
"The provisions of this article shall not apply to any county where the county commissioners, or the county executive and county council, prior to September 1, 1971, shall determine to and in fact shall implement or maintain at the county's expense a separate or different system for providing counsel to indigent accused persons. Any county which determines to implement a separate or different system may subsequently rescind such determination and be included under the provisions of this article upon notification to the Public Defender by the county government, provided, however, that the provisions of

"It is hereby declared to be the policy of the State of Maryland to provide for the realization of the constitutional guarantees of counsel in the representation of indigents, including related necessary services and facilities, in criminal and juvenile proceedings within the State, and to assure effective assistance and continuity of counsel to indigent accused taken into custody and indigent defendants in criminal and juvenile proceedings before the courts of the State of Maryland, and to authorize the Office of Public Defender to administer and assure enforcement of the provisions of this article in accordance with its terms."

§ 1. It accordingly established the OPD and designated the Public Defender as its "head." § 3. To the Public Defender was committed "the primary duty ... to provide legal representation for any indigent defendant eligible for services," to be provided in certain enumerated proceedings, § 4(a) and (b), and the "general responsibility for the operation of the Office of the Public Defender and all district offices," § 5(1), including such powers and duties, § 5(2)-(8), as will "effectuate the purposes" of the statute and "promote the efficient conduct of the work and general administration of the office, its professional staff and other employees." § 5(3). The Office of the Public Defender was charged with determining the eligibility for services of any person seeking legal representation, which it was required to do on the basis of that person's need, as defined in § 7(a). To make that determination, it was empowered to

"make such investigation of the financial status of each defendant at such time or times as the circumstances shall warrant, and in connection therewith the office shall have the authority to require a defendant to execute and deliver such written requests or authorizations as may be necessary under applicable law to provide the office with access to

---

this article shall not become effective in a county rescinding its determination until such date as the Public Defender determines that it is feasible to provide the county with services pursuant to this article."

records of public or private sources, otherwise confidential, as may be needed to evaluate eligibility."

§ 7(b). In addition, the Legislature provided "a comprehensive scheme whereby the Public Defender could obtain reimbursement from defendants later found able to pay for part or all of his services." *Baldwin,* 51 Md.App. at 551, 444 A.2d at 1066–67, citing and quoting § 7(c)-(f).

The Legislature also acknowledged that certain courts had a role to play, in certain circumstances, in the appointment of counsel for indigent defendants. *See* § 6(f), n. 3 *supra.* That acknowledgment was made after it had extensively treated panel attorneys, their appointment, § 6(b), duties, § 6(c), compensation, § 6(d), and entitlement to staffing. § 6(e).

The intent of the Legislature in enacting this statutory scheme can, must, be discerned by reading the various provisions together, giving effect to each, *see Gordon Family P'ship v. Gar on Jer,* 348 Md. 129, 138, 702 A.2d 753, 757 (1997); *Outmezguine v. State,* 335 Md. 20, 41, 641 A.2d 870, 880–81 (1994); *Popham v. State Farm Mut. Ins., Co.,* 333 Md. 136, 148, 634 A.2d 28, 34 (1993); *Gov't Employees Ins. Co. v. Ins. Comm'r,* 332 Md. 124, 131–132, 630 A.2d 713, 717 (1993); *Cicoria v. State,* 332 Md. 21, 33, 629 A.2d 742 (1993), and "constru[ing them] according to their ordinary and natural import." *Foley v. K. Hovnanian at Kent Island, LLC,* 410 Md. 128, 152, 978 A.2d 222, 236, (2009) (quoting *Lanzaron v. Anne Arundel County,* 402 Md. 140, 149, 935 A.2d 689, 694 (2007)) (quoting *Rose v. Fox Pool Corp.,* 335 Md. 351, 359, 643 A.2d 906, 909 (1994)). In pursuing that intent, this Court will:

"neither add words to, nor delete words from, a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature chose to use, and we do not engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning."

*In re Gloria H.,* 410 Md. 562, 581, 979 A.2d 710, 720 (2009); *see also Chow v. State,* 393 Md. 431, 443, 903 A.2d 388, 395 (2006). Instead, each word will be given effect, so that "no word, clause, sentences or phrase is rendered superfluous or

nugatory." *Foley,* 410 Md. at 152, 978 A.2d at 237. "And a statute is to be given a reasonable interpretation, not one that is illogical or incompatible with common sense." *In re Gloria H.,* 410 Md. at 581, 979 A.2d at 721.

Applying these principles to the construction of the Public Defender Statute, it is clear that the OPD, not the designated courts, has been entrusted by the Legislature with both the initial, as the majority emphasizes, *OPD v. State,* 413 Md. at 431–34, 992 A.2d at 67–69, and the primary, as § 4(a) provides, responsibility for insuring that indigent defendants receive the legal representation to which they constitutionally are entitled. Indeed, § 4(a) says as much: "It shall be the primary duty of the Public Defender to provide legal representation for any indigent defendant eligible for services under this article." To be sure, there is a role reserved for the trial courts. That role was prescribed in § 6(f). It is telling that the only reference to a court role in the appointment of counsel process simply provides

"Nothing in this article shall be construed to deprive [a circuit court] of its authority to appoint an attorney to represent an indigent person ... where the Office of the Public Defender declines to provide representation to an indigent person entitled to representation under this article,"

and does not characterize the court as having "corrective" responsibilities for the OPD or prescribe a review regime for its eligibility determinations. This is perfectly consistent with the interpretation given it by both *Thompson* and *Baldwin:* that the appointment authority of the courts was simply supplemental and a failsafe; as the court in *Baldwin* put it, the role reserved to the courts to appoint counsel is "[i]n obvious recognition of the fact that the whole system has Constitutional underpinnings and that the courts must, of necessity, be the ultimate protector of those underpinnings." 51 Md.App. at 552, 444 A.2d at 1067, explicating § 6(f). All of the other provisions that address eligibility or appointment refer to the OPD and prescribe the procedures and standards that the OPD must apply and/or the authority that the OPD

has. I repeat, there simply is no provision, expressly or otherwise, calling for, never mind requiring, court review of the appointment or eligibility determinations made by the OPD.

### b. *Corrective Role*

The Public Defender statute does not provide for a "corrective role" by which trial judges may review the OPD's eligibility determinations, erroneous or otherwise. When the OPD declined representation, the trial court, to be sure, was required independently to determine whether it found the defendant to be indigent. When, as a result of that determination, it concluded that the OPD had misapplied its governing statute, as the "ultimate protector of those [Constitutional] underpinnings," *Baldwin,* 51 Md.App. at 552, 444 A.2d at 1067, the trial court, in accordance with our holdings, could have, and should have, pursuant to the statutory authority prescribed in § 6(f), appointed "an attorney."

Not so, says the majority. It reasons:

"Under Art. 27A, § 7, the *'initial* determination, under the law, is to be made by the Public Defender,' based upon the criteria enumerated in the statute for determining indigency. *Baldwin,* 51 Md.App. at 551, 444 A.2d at 1066 (emphasis added). The OPD's initial determination of indigency is not final, however, because "[i]n obvious recognition of the fact that the whole system has Constitutional underpinnings and that the courts must, of necessity, be the ultimate protector of those underpinnings, *id.* at 552, 444 A.2d at 1067[.]' ...."

*OPD v. State,* 413 Md. at 432, 992 A.2d at 67–68. The majority further concludes that: "the General Assembly provided in Art. 27A, § 6(f), a clear oversight and corrective role for the courts in the indigency determination and appointed-counsel process." *OPD v. State,* 413 Md. at 432, 992 A.2d at 68.

It is true, of course, that the initial determination of a defendant's eligibility for appointive counsel generally will be

made by the OPD. It is also true that, when it has a conflict or when it declines representation, the OPD may not, and likely will not, make the final determination; indigent individuals are entitled to representation even when the OPD cannot, or will not, provide it. Section § 6(f) recognizes this to be so and, thus, addresses those situations. With regard to the situation *sub judice*, it makes clear that the trial courts may appoint when the OPD has refused to. Giving courts that authority, in that circumstance, is a far cry from giving them a "corrective role" over the OPD, which, by express statutory provision, *see* § 4(a), is the "primary player" in the process. Neither this Court nor the Court of Special Appeals has ever held that § 6(f) prescribes a "corrective role" for trial courts and § 6(f), by its express terms, do not purport to give trial courts such a role, as it pertains to the "indigency determination and appointed-counsel process."

The majority all but concedes this point when it acknowledges, as it must, that § 6(f) "does not specify either the procedure or the standard to be employed by the court." *OPD v. State*, 413 Md. at 432, 992 A.2d at 68. Nevertheless, relying on *Thompson's* pronouncement that courts must make their own independent indigency determination, *id.*, and the absence of prohibitory language—"[n]o appellate court in this State has held previously that the attorneys in the local OPD are ineligible from appointment by a circuit court following the local OPD's factually and legally erroneous rejection of representation of an indigent defendant"—*OPD v. State*, 413 Md. at 436, 992 A.2d at 70, it reads into that section an affirmative "corrective" role.

The lift is too heavy. Requiring trial courts to make an independent assessment of the indigency of a defendant turned down by the OPD is a far cry from investing those courts with a "corrective role." It must be remembered that the Court that imposed the "independent assessment" requirement on trial courts, the *Thompson* Court, rejected the notion being espoused by the majority, *Thompson*, 284 Md. at 129, 394 A.2d at 1198, that it had a responsibility, a role to play in directing or correcting the OPD. That Court was clear in

holding that there was no such role. Nor is the absence of appellate decisions holding the OPD, who has declined representation, immune to appointment by a circuit court persuasive. The converse is equally true. There are an equal dearth of appellate opinions holding the OPD eligible—that the OPD can be forced to represent an individual—for appointment.

I reject the assertion that appointing the OPD is necessary in order to prevent the court from being rendered "powerless to correct a manifest error." *OPD v. State*, 413 Md. at 431, 992 A.2d at 67. The goal of the Public Defender statute is to ensure a defendant's right to counsel. A manifest injustice would occur if the defendant were wrongly denied counsel. The OPD is entrusted with the primary responsibility to provide counsel and, in discharging that responsibility, is required to make eligibility determinations. Section 6(f) addresses the situation when the OPD's determination is to deny representation; its purpose and effect are to ensure that an indigent individual is provided representation. The trial court, in that event, is authorized to determine for itself whether the defendant is eligible and, if so, to appoint counsel. Thus, the trial court is not powerless to correct a manifest injustice. As the ultimate arbiter of the constitutional mandate, it is empowered, as, where appropriate, it may, and is expected, to appoint counsel. Denying the trial court the ability to appoint the OPD simply does not have the effect the majority posits and supposes.

### 3. *Statutory Construction—The OPD's Authority to Decline Representation*

The canons of statutory construction demand that no word in the statutory text is interpreted in a way which makes it meaningless. *Foley*, 410 Md. at 152, 978 A.2d at 237. That is exactly what the majority does here; it completely ignores this canon. Sections 7 and 6(f) give the OPD the ability to determine the eligibility of defendants for appointed counsel, which includes the authority to decline representation. Nevertheless, the majority holds that, despite the statutory au-

thority given the OPD to decline representation, the OPD may be forced to represent individuals whom it has rejected, that it does not actually possess the power to decline representation.

According to the majority, the OPD's determination to decline representation is subject to review by the court and, should the court determine that it misapplied its statute, reversal of that decision, which, worse yet, will take the form of being appointed to represent the individual it had previously rejected. This flies in the face of § 6(f), which does not provide for such review. Moreover, to read § 6(f) as the majority does, requires that you read out of § 6(f) the OPD's right to decline representation and make it subject and subordinate to the court's eligibility decision, rendering that portion of the statute completely meaningless. *Foley*, 410 Md. at 152, 978 A.2d at 237. This result conflicts with the language of the statute and, thus, with what the Legislature intended.

### 4. *Arbitrary and Capricious Standard*

The majority's holds that the court has the authority to appoint the OPD as "an attorney," upon finding that the OPD's determination was arbitrary or capricious. It states:

"Of course, where the local OPD rejects representation based on its own consideration of the indigency criteria provided by Art. 27A § 7, its determination is entitled to deference, and the court will interfere only when that decision is arbitrary or capricious."

*OPD v. State*, 413 Md. at 435, 992 A.2d at 69–70. It is not clear what the source of this review standard is. That it is novel, not previously applied, and is reminiscent of, but not identical to, that applicable to administrative cases comes to mind. The OPD is not an administrative agency. Nevertheless, I will test it under the administrative umbrella.

### 5. *The Administrative Agency Context.*

If OPD were an administrative agency, we would have to look to § 6(f) to determine whether the court had jurisdiction to review its decisions. "[I]n order for an administrative agency's action properly to be before this Court (or any court)

for [statutory] judicial review, there generally must be a legislative grant of the right to seek judicial review." *See Appleton Reg'l Cmty. Alliance v. County Comm'rs,* 404 Md. 92, 98–99, 945 A.2d 648, 651 (2008), quoting *Harvey v. Marshall,* 389 Md. 243, 273, 884 A.2d 1171, 1189 (2005). Section 6(f) contains no language from which a grant of judicial review of the OPD's eligibility determinations can be discerned. If that section sufficed, it would be a far cry from the language the Legislature customarily uses to grant judicial review. *See Rogers v. Eastport Yachting Ctr., LLC.,* 408 Md. 722, 732, 971 A.2d 322, 328 (2009).

Administrative agencies can have quasi-judicial functions. This Court has stressed that, while the courts have the ability to review administrative decisions, its "role in reviewing an administrative agency['s] adjudicatory decision is narrow." *Md. Aviation Admin. v. Noland,* 386 Md. 556, 571, 873 A.2d 1145, 1154 (2005); *see Sadler v. Dimensions Healthcare Corp.,* 378 Md. 509, 529, 836 A.2d 655, 666–67 (2003); *Jordan v. Hebbville,* 369 Md. 439, 450, 800 A.2d 768, 774 (2002). "The Maryland Administrative Procedure Act, Maryland Code (1984, 1999 Repl. Vol., 2000 Supp.) § 10–222 of the State Government Article [22], delineates the procedure for judicial

---

**22.** MD State Gov't Code Ann. § 10–222 states in relevant part,

(g) Proceeding.—
  (1) The court shall conduct a proceeding under this section without a jury.
  (2) A party may offer testimony on alleged irregularities in procedure before the presiding officer that do not appear on the record.
  (3) On request, the court shall:
    (i) hear oral argument; and
    (ii) receive written briefs.
(h) Decision.—In a proceeding under this section, the court may:
  (1) remand the case for further proceedings;
  (2) affirm the final decision; or
  (3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:
    (i) is unconstitutional;
    (ii) exceeds the statutory authority or jurisdiction of the final decision maker;
    (iii) results from an unlawful procedure;

review of a decision of a State agency." *Sadler v. Dimensions Healthcare Corp.*, 378 Md. at 528–529, 836 A.2d at 666; *see Jordan v. Hebbville*, 369 Md. 439, 450, 800 A.2d 768, 774 (2002). This Court in *Anne Arundel County v. Halle Development, Inc.*, recently discussed the boundaries between administrative agencies and the judiciary:

> " 'the role of the courts in regard to these administrative agency functions is to see that these responsibilities were properly empowered to the agency and have been performed within the confines of the traditional standards of procedural and substantive fair play. In order to perform this essential duty, the courts may be provided with specific authorization to do so by the Legislature through statutory provision, but, even absent such authority, the judiciary has an undeniable constitutionally-inherent power to review, within limits, the decisions of these administrative agencies.' 'This power of review, whether authorized by statute or assumed inherently, cannot be a substitution of the court's judgment for that of the agency' and is limited to determining whether the contested quasi-judicial decision 'was rendered in an illegal, arbitrary, capricious, oppressive or fraudulent manner.' "

408 Md. 539, 556, 971 A.2d 214, 224 (2009) (internal citations omitted).

When conducting this review, the court:

> " 'must review the agency's decision in the light most favorable to it,' and 'the agency's decision is prima facie correct and presumed valid[.]' *[Bd. of Physician Quality Assurance v.] Banks*, 354 Md. [59,] [ ] 68, 729 A.2d [376,] [ ] 381 [1999]. . . . In addition, the agency's interpretations and applications of statutory or regulatory provisions 'which the agency administers should ordinarily be given considerable weight by reviewing courts.' *[Id.]*. Furthermore, the expertise of the agency in its own field should be respected.' "

---

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

*Md. Aviation Admin. v. Noland,* 386 Md. 556, 573, n. 3, 873 A.2d 1145, 1155 n. 3.

If the court determines that the agency's decision was arbitrary or capricious, it may then remand the matter to the administrative agency. It cannot, as this Court has made clear, substitute its judgment for that of the administrative agency. On this point, this Court has stated:

" 'Generally, when an administrative agency utilizes an erroneous standard and some evidence exists, however minimal, that could be considered appropriately under the correct standard, the case should be remanded so the agency can reconsider the evidence using the correct standard.' The reviewing court must remand the matter so that it will not usurp an administrative function:

" 'It is a fundamental principle of administrative law that a reviewing court should not substitute its judgment for the expertise of the administrative agency from which the appeal is taken. This principle underlies the rule that if an administrative function remains to be performed after a reviewing court has determined that an administrative agency has made an error of law, the court ordinarily may not modify the agency order. Under such circumstances, the court should remand the matter to the administrative agency without modification[.] . . .' Finally, if an administrative function remains to be performed, a reviewing court may not modify the administrative agency's action even when a statute provides that the court may 'affirm, modify or set aside' because a court may not usurp administrative functions.' "

*Halle Dev., Inc.,* 408 Md. at 557, 971 A.2d at 224–25 (citation and footnote omitted); *see also Bell Atl. of Md., Inc. v. Intercom Sys. Corp.,* 366 Md. 1, 21, 782 A.2d 791, 803 (2001) (citing *Baltimore Gas & Electric Co. v. McQuaid,* 220 Md. 373, 382, 152 A.2d 825, 829–30 (1959)) (stating judicial scrutiny is limited to "finding whether there was illegality or unreasonableness in the Commission's action"); *see Office of the Governor v. Washington Post Co.,* 360 Md. 520, 581, 759 A.2d 249, 282 (2000) (Cathell, J., dissenting) ("Thus, in regard to admin-

istrative agencies, which, while often functioning as fact-finding bodies, perform essentially nonjudicial duties, a Maryland court's 'inquiry is [almost always] limited to finding whether there was illegality or unreasonableness in the ... action— when that inquiry is finished, judicial scrutiny ends....' ") (quoting *Baltimore Gas Co.*, 220 Md. at 382, 152 A.2d at 830).

"[J]udicial review of the actions of an administrative agency is restricted primarily because of the fundamental doctrine of separation of powers as set forth in Article 8 of the Declaration of Rights of the Maryland Constitution." *Sadler*, 378 Md. at 530, 836 A.2d at 667–68 (footnote omitted). We recognize, of course, that the three branches are not " 'wholly separate and unmixed,' " *Getty v. Carroll County Bd. of Elections*, 399 Md. 710, 731, 926 A.2d 216, 229 (2007) (quoting *Crane v. Meginnis*, 1 G. & J. 463, 476 (1829)), but the doctrine "cannot be stretched to a point where, in effect, there no longer exists a separation of governmental power...." *Dep't of Natural Res. v. Linchester Sand & Gravel Corp.*, 274 Md. 211, 220, 334 A.2d 514, 521 (1975). The doctrine is in place to " 'preserve [ ] to one branch of government its *essential* functions and prohibit [ ] any other branch from interfering with it or usurping those functions.' " *McCulloch v. Glendening*, 347 Md. 272, 283, 701 A.2d 99, 104 (1997) (quoting *O'Hara v. Kovens*, 92 Md.App. 9, 22–23, 606 A.2d 286, 292, *cert. denied* 328 Md. 93, 612 A.2d 1316 (1992)).

Art. § 6(f) is not a judicial review statute. The heading is not "Judicial Review," but, in relevant part "courts not deprived of authority to appoint counsel in certain situations." At the most, this section, as described in detail above, gives the court the ability to appoint "an attorney." Neither section § 6(f) nor any other provision of Art. 27A contains language providing the courts with the authority to review the OPD's indigency determinations, not to mention permitting it to "correct" them. The statute is specific. It grants the court the authority to appoint "an attorney" when, *inter alia*, the OPD declines representation. Section 6(f) very pointedly and expressly does not grant the courts the power to review or appoint the OPD.

### III. The Contempt

I concur with the majority that the contempt order should not stand. I agree with the majority that, while that order stated the basis for the finding and that Northrop was in direct contempt, it did not indicate whether the contempt was criminal or civil. *See OPD v. State,* 413 Md. at 437, 992 A.2d at 71. Failure to comply with statutory guidelines is fatal to the order's validity. *See Hermina v. Baltimore Life Ins. Co.,* 128 Md.App. 568, 589, 739 A.2d 893, 905 (1999)("The failure of the court to comply with [Md.] Rule 15–203(b)(2) renders its order of contempt fatally defective in substance as well as form.... The defect in the judgment, failure to specify the evidentiary facts on which it was based, as required by [Md.] Rule 15–203(b)(2), requires that we reverse it."). In this case, the trial judge failed to comply with Md. Rule 15–203(b)(1).[23]

I would add, however, that, for the reasons articulated above, the trial court exceeded its authority when it appointed the OPD, and later Northrop, to represent Stinnett. On this additional ground, the contempt order must be reversed.

An individual, in this case, an attorney ordered by the court to perform a task, which runs contrary to his or her statutory obligations, has neither a duty nor an obligation to comply with that order. That is the situation here. Although Northrop did not comply with the court's order that he represent Stinnett, a defendant whose representation the OPD had declined, he had no duty to do so.

Judges BATTAGLIA and GREENE join in the views herein expressed.

---

**23.** Rule 15–203. Direct civil and criminal contempt.
(b) Order of contempt. Either before sanctions are imposed or promptly thereafter, the court shall issue a written order stating that a direct contempt has been committed and specifying:
(1) whether the contempt is civil or criminal,
Although, he did provide a written order, he did not indicate whether the contempt was criminal or civil.